[Civ. No. 10704.   Third Dist.   Sept. 12, 1963.]

THOMAS GREEN et al., Petitioners, v. THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent.

James Robert Nielsen and Robert E. Green for Petitioners.

Richard W. Dickenson, County Counsel, Richard W. Johnson and Robley E. George, Deputy County Counsel, for Respondent.

PIERCE, P. J.—In a divorce action instituted by the wife, the husband cross-complained. A main issue at the trial was custody of the children. The husband contended the wife was an unfit person because of her excessive use of narcotic drugs. During the trial there was evidence (according to the allegations of respondent court's answer in these proceedings) that the wife had obtained prescriptions from eight or ten physicians and that she had purchased prescription drugs from ten or more different drugstores. The husband's counsel caused subpoenas duces tecum to be issued to petitioners, who are pharmacists, to appear at the trial bringing with them their prescription records. They appeared but refused to testify as to the nature of the drugs dispensed and as to their strength. Respondent court found them guilty of contempt, fined each $25 and stayed execution pending the determination of the proceedings.[1]

A writ of review, prayed for here, is the proper method to annul a contempt order if it is made in excess of jurisdiction. (Code Civ. Proc., § 1068; *State Board of Equalization* v. *Superior Court*, 20 Cal.2d 467, 471 [127 P.2d 4].)

The grounds of petitioners' refusal to testify were

---

[1]Interlocutory decree of divorce was, according to the answer of respondent court, thereafter issued to both parties and the husband was awarded custody of the children. The facts upon which such award was based are not before us.

that information as to the nature and strength of the drugs dispensed by a pharmacist on prescription by a licensed physician is as much a part of the physician-patient privilege as would be the testimony of the physician himself.

Petitioners' contention may be summarized thusly: Although the statute (Code Civ. Proc., § 1881, subd. 4) does not expressly mention a pharmacist dispensing a doctor's prescription as falling within the privileged class, such should be inferred because (a) physicians do not usually dispense their own prescribed drugs but must rely upon pharmacists, (b) use of some drugs is exclusively for the treatment or cure of specific ailments, e.g., use of antabuse for alcoholism, dilantin for epilepsy; (c) in such cases knowledge of the drug dispensed would reveal the patient's confidentially communicated information to the doctor, and therefore (d) to protect the communication the privilege must be extended to the dispensing pharmacist.

The question is novel in California and petitioners cite no case bringing the pharmacist within the physician-patient privilege in any other jurisdiction. Respondent cites two cases from other states holding that the pharmacist dispensing a doctor's prescription is *not* within the privilege. (*Brown* v. *Hannibal & St. Joseph R.R. Co.* (1877) 66 Mo. 588; *Deutschmann* v. *Third Ave. R. Co.*, 87 App.Div. 503 [84 N.Y.S. 887].) In the latter case the court says (on p. 894 [84 N.Y.S.]):

" ... The necessity of having physicians' prescriptions filled by druggists may furnish a reason for the Legislature to say that public policy will interpose to prevent them from making disclosures of the information thus obtained, but we are not now dealing with such question. It is enough now to say that the statute in question has no application to such a situation."

Petitioners urge that California authorities hold that the privilege is to be liberally construed in favor of the patient. (*Turner* v. *Redwood Mutual Life Assn.,* 13 Cal.App.2d 573, 576 [57 P.2d 222]; *Kramer* v. *Policy Holders etc. Assn.*, 5 Cal.App.2d 380 [42 P.2d 665].) They point to the fact that prescriptions of a medical practitioner may be dispensed or compounded only by a registered pharmacist (Bus. & Prof. Code, § 4050) or by the physician himself (id., § 4051) and that a pharmacist is required to treat the contents and effect of a prescription and the nature of the patient's illness as being confidential. (Cal. Adm. Code, tit. 16, ch. 17, art. 9,

§ 1764.) It is not contended, and could not be, that this latter section in and of itself creates a privilege.

■ Existence of a confidential relationship does not ipso facto cause communications between the confidants to be privileged. Petitioners cite cases from other jurisdictions holding that hospital records and X-rays are within the privilege. (*Palmer* v. *John Hancock Mut. Life Ins. Co.,* 150 Misc. 670 [270 N.Y.S. 10] ; *Hansen* v. *Sandvik,* 128 Wash. 60 [222 P. 205] ; *In re Nickel's Estate,* 321 Mich. 519 [32 N.W.2d 733].)

They also argue that the "intermediate agent" concept as applied in *City & County of San Francisco* v. *Superior Court,* 37 Cal.2d 227 [231 P.2d 26, 25 A.L.R.2d 1418], in relation to the attorney-client privilege, should, by analogy, be said to apply here. In *City & County of San Francisco* it was held that a physician employed by a plaintiff's attorney in an action for personal injuries to examine the plaintiff and evaluate her complaints could not be compelled by the defendant to testify, but this was not because of the physician-patient privilege, it was because of the attorney-client privilege. Petitioners urge the cases are analogous. As has been stated by Dean Wigmore (8 Wigmore on Evidence (Mc Naughton rev.) § 2380a, p. 831) :

"Nothing is more fallible than an argument from analogy ... [T]he answer is that the services of an attorney are sought primarily for aid in litigation, actual or expected, while those of the physician are sought for physical cure; that hence the rendering of that legal advice would result directly and surely in the disclosure of the client's admissions if the attorney's privilege did not exist, while the physician's curative aid can be and commonly is rendered irrespective of making disclosure; and, finally, that thus the absence of the privilege would convert the attorney habitually and inevitably into a mere informer for the benefit of the opponent, while the physician, being called upon only rarely to make disclosures, is not consciously affected in his relation with the patient. The function of the two professions being entirely distinct, the moral effect upon them of the absence of the privilege is different."

The distinct nature of the attorney-client relationship is also pointed out by Justice Traynor in *City & County of San Francisco, supra,* at page 235, where a portion of the above statement by Dean Wigmore is quoted.

The physician-patient privilege did not exist at common

law and it has been roundly criticized by common-law scholars. (See, e.g., 8 Wigmore on Evidence (McNaughton rev.) §§ 2380, 2380a, pp. 818, 829; McCormick on Evidence, § 101, p. 212; Dean Hale in Codification of the Law of Evidence (1937) p. 111—as quoted in 2 Hastings L.J., p. 39.)

Its birth was statutory, in New York in 1828, seemingly engendered by the lawmakers' entrapment in the fallacy of "argument by analogy" discussed above, comparing the doctor-patient privilege to the statements of Buller, J., in 1792, in a case involving confidential communications to a lawyer. (McCormick, p. 221.)

The doctor-patient privilege appears to have been adopted in two-thirds of the states. (8 U.C.L.A. L.Rev. 625.) In California it is venerable. (Stats. 1851, ch. 1, § 398, p. 114.) The language of the original statute, "A licensed physician or surgeon shall not, without the consent of his patient, be examined as a witness, as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient" has not been materially altered throughout the years except to limit the privilege to civil cases. However, a number of exceptions have been written into the code section (Code Civ. Proc., § 1881, subd. 4), one of which will be noted below.

The purpose of the privilege has been described as dual: (1) to encourage free disclosure of facts by the patient to the doctor which otherwise might be withheld and which may aid the doctor in diagnosis and treatment (8 Wigmore (McNaughton rev.) § 2380a, p. 828); and, carrying this "to its next logical step," (2) to "prevent the humiliation of the patient which might occur by disclosure of his ailments." (8 U.C.L.A. L.Rev. p. 625; *City & County of San Francisco* v. *Superior Court, supra,* p. 232.)

Criticism of the doctrine may be epitomized:

Dean Wigmore opines that few communications by a patient to a doctor are intended to be confidential and that even where they are the patient is not deterred from making them by the possibility of their disclosure. (8 Wigmore, *supra,* p. 829.)

It has also been stated: "Professional ethics give the patient broad and efficient protection against the disclosure of confidences by the doctor outside of the courtroom. There is a grave doubt whether it is in the public interest to extend the right of the patient to the closing of the doctor's lips as a witness in an action where the condition of the patient is a

material and relevant matter. *All privileges are blockades to the ascertainment of the truth and should be conservatively and reluctantly granted."* (Italics added.) (Witkin, California Evidence, § 430, p. 481, quoting the Comment on Uniform Rules of Evidence, rule 27.)

The Uniform Rules of Evidence have *not* been adopted in California. We *do* have the rule of privilege embodied in Code of Civil Procedure section 1881, subdivision 4, as expressing the policy of the California Legislature. Therefore the criticisms expressed above by the National Conference of Commissioners on Uniform State Laws and by other legal scholars would be academic if we had before us a case where the statute expressly or by necessary implication included pharmacists within the cloak of the protective privilege. The statute here does neither.

And, while, as we have noted, petitioners have cited cases saying that the privilege is to be liberally construed, this court, speaking through Justice Thompson in *Samish* v. *Superior Court,* 28 Cal.App.2d 685, has stated, at page 695 [83 P.2d 305]:

"Since the protection against privileged communications often leads to a suppression of the truth and to a defeat of justice, the tendency of the courts is toward a strict construction of such statutes. (*Dwelly* v. *McReynolds,* 6 Cal.2d 128, 131 [56 P.2d 1232]; 27 Cal.Jur. § 30, p. 44.) Unless the statute expressly extends the privilege to specific persons or classes, the law will not justify such individuals in refusing to disclose facts contained in documents which would otherwise be competent evidence in a particular proceeding.

In the *Dwelly* case, *supra,* the court said:

" 'The burden is upon the party seeking to suppress the evidence to show that it is within the terms of the statute.' [Citations.] The statements to be privileged and hence inadmissible *must come within the express terms of the section.* [Citations.] " (Italics added.)

Here petitioners are asking us not merely to extend the privilege to a class not expressly included in the statute and without assuming the burden of showing necessity for its inclusion; they also ask us to do so where the privilege is invoked not generally *but in a case where its use would block the ascertainment of truth on a vital issue.*

The husband has alleged, as proof of unfitness of the wife to be custodian of the children, her excessive use of narcotic drugs. Numerous physicians consulted and pharmacists

visited are said to have important evidence material on this issue.

In the first place, from the very fact of the numbers of both doctors and drugstores involved, it may be seriously doubted whether this patient ever contemplated that her disclosures were in confidence and by the express language of the statute confidence is the sine qua non of privilege. Yet the wife here would bar from a court of justice information which she is alleged to have freely imparted to more than a dozen persons, including perhaps a miscellany of drug clerks.

But, secondly, and this seems to us to cinch the problem's determination, the wife here seeks to use the privilege not as a shield but as a sword. By bringing this action in which the welfare of the children of the marriage is a vital factor, *the wife has placed her fitness as a custodial parent on the line.* In fact her position in invoking the privilege is really this: I assert that the welfare of the children will be best served by placing them with me because I am a normal, well and stable parent fit to have them, but the court, nevertheless, cannot be allowed to test these assertions by examining my doctors (or their agents, the pharmacists) as witnesses, notwithstanding that they are the persons best able to confirm my fitness!

Therefore, even were we inclined to extend the language of Code of Civil Procedure section 1881, subdivision 4, to create a privilege in a prescription-dispensing druggist generally, which we are by no means disposed to do, we still could not reasonably do so under the facts of this case.

Supplementing our reasons, we point out that even in the case where the testimony of the doctor himself is involved the Legislature has created an express exception stating: ". . . [W]here any person brings an action to recover damages for personal injuries, such action shall be deemed to constitute a consent by the person bringing such action that any physician who has prescribed for or treated such person and whose testimony is material in said action shall testify."

██ Justice Traynor in commenting on this in *City & County of San Francisco, supra,* at page 232, says: ". . . The patient-litigant exception precludes one who has placed in issue his physical condition from invoking the privilege on the ground that disclosure of his condition would cause him humiliation. *He cannot have his cake and eat it too."* (Italics added.)

That language is equally appropriate under the circumstances of this case.

We also note that Uniform Rules of Evidence, rule 27 (4), contains an exception denying the privileges in a proceeding in which the condition of the patient "is an element or factor of the claim or defense of the patient. . . ." We cannot of course, prophesy that the Legislature will ultimately accept the recommendations of the Conference of Commissioners as the policy of this state *where the testimony of the doctor himself is concerned.* We can and do, however, refuse to exercise the judicial power of statutory interpretation to give the present statute a meaning not expressed therein and which, if inferred, would produce a result hostile to sound legal principles.

The order to show cause heretofore issued by this court is discharged and the contempt order is affirmed.

Schottky, J., and Friedman, J., concurred.

Petitioners' application for a hearing by the Supreme Court was denied November 6, 1963.