[Crim. No. 14131. In Bank. Apr. 15, 1970.]

In re JOSEPH E. LIFSCHUTZ on Habeas Corpus.

416

## COUNSEL

Severson, Werson, Berke & Bull, Kurt W. Melchior and Nicholas S. Freud for Petitioner.

Rosenthal & Leff, Irwin Leff, Wainer & Stone and Arnold J. Stone as Amici Curiae on behalf of Petitioner.

Keith C. Sorenson, District Attorney, James M. Parmelee, Chief Deputy District Attorney, and James W. Foley, Deputy District Attorney, for Respondent.

Cesari & Werner and James B. Werner in support of Respondent.

## OPINION

**TOBRINER, J.**—Dr. Joseph E. Lifschutz, a psychiatrist practicing in California, seeks a writ of habeas corpus to secure his release from the custody of the Sheriff of the County of San Mateo. Dr. Lifschutz was imprisoned after he was adjudged in contempt of court for refusing to obey an order of the San Mateo County Superior Court instructing him to answer questions and produce records relating to communications with a former patient. Dr. Lifschutz contends that this underlying court order was invalid as unconstitutionally infringing his personal constitutional right of privacy, his right effectively to practice his profession, and the constitutional privacy rights of his patients. He also attacks the order, or more specifically, the statutory provisions which authorize the compulsion of his testimony in these circumstances, as unconstitutionally denying him the equal protection of the laws since, under California law, clergymen could not be compelled to reveal certain confidential communications under these circumstances.

The instant proceeding arose out of suit instituted by Joseph F. Housek against John Arabian on June 3, 1968, for damages resulting from an alleged assault. Housek's complaint alleged that the assault caused him "physical injuries, pain, suffering and severe mental and emotional distress." Defendant Arabian deposed the plaintiff and during the course of that deposition Housek stated that he had received psychiatric treatment from Dr. Lifschutz over a six-month period approximately 10 years earlier. Nothing in the record indicates that the plaintiff revealed the nature or contents of any conversation with or treatment by Dr. Lifschutz.

Arabian then subpenaed for deposition Dr. Lifschutz and all of his medical records relating to the treatment of Housek. (Code Civ. Proc., §§ 2016, 2019, subd. (a).) Although Dr. Lifschutz appeared for the deposition, he refused to produce any of his medical records and refused to answer any questions relating to his treatment of patients; the psychiatrist declined even to disclose whether or not Housek had consulted him or had been his patient. Although notified, neither plaintiff Housek nor his attorney was present at this deposition and neither has appeared in any of the subsequent hearings related to this proceeding. Housek has neither expressly claimed a psychotherapist-patient privilege, statutory or constitutional, nor expressly waived such a privilege.

In response to the psychiatrist's refusal to cooperate, defendant Arabian moved for an order of the superior court compelling the production of the subpenaed records and the answers to questions on deposition (Code Civ. Proc., § 2034, subd. (a)). Relying on the patient-litigant exception

of section 1016 of the Evidence Code, the superior court determined that because the plaintiff, in instituting the pending litigation, had tendered as an issue his mental and emotional condition, the statutory psychotherapist-patient (Evid. Code, § 1014) privilege did not apply. On December 20, 1968, the court therefore ordered Dr. Lifschutz to comply with the sub-pena and to answer questions posed during deposition.[1] On January 15, 1969, defendant attempted to continue with the deposition of Dr. Lif-schutz as ordered by the superior court, but petitioner remained resolute in his refusal to respond or produce records. Thereafter, petitioner sought a writ of prohibition to restrain the superior court from enforcing its order; the writ was denied by the Court of Appeal, a petition for hearing was denied by this court, and finally a petition for certiorari to the United States Supreme Court was similarly denied.

The superior court held another hearing on December 5, 1969; when Dr. Lifschutz again refused to comply with the order, the court adjudged him in contempt (Code Civ. Proc., § 1209, subd. 5)[2] and ordered him to be confined in the custody of the Sheriff of San Mateo County (Code Civ. Proc., § 1219). After the Court of Appeal on December 8, 1969, denied without opinion a petition for habeas corpus, this court agreed to hear the case and ordered the petitioner released on his own recognizance pending our determination of the cause.

Dr. Lifschutz presents a novel challenge, attempting to raise far-reaching questions of constitutional law. From the affidavits and correspon-dence included in the record we note that a large segment of the psychia-tric profession concurs in Dr. Lifschutz's strongly held belief that an absolute privilege of confidentiality is essential to the effective practice of psychotherapy.

We recognize the growing importance of the phychiatric profession in our modern, ultracomplex society. The swiftness of change—economic, cultural, and moral—produces accelerated tensions in our society, and the potential for relief of such emotional disturbances offered by psycho-

---

[1] The order read in full: "The witness, Joseph E. Lifschutz, is hereby ordered to answer the questions involved in the taking of his deposition and to comply with the production requirements of the subpoena duces tecum issued in this proceeding (the declaration therefor being filed herein on October 11, 1968).

"The matter will be continued for 30 days during which time said Joseph E. Lifschutz will comply with this order at a time during said period agreed upon by the parties, or on proper notice in the absence of agreement.

"Motion for sanctions and attorney's fees denied."

[2] Section 1209, subdivision 5, provides: "The following acts or omissions in respect to a court of justice, or proceedings therein, are contempts of the authority of the court: . . . 5. Disobedience of any lawful judgment, order, or process of the court; . . . "

therapy undoubtedly establishes it as a profession essential to the preservation of societal health and well-being. Furthermore, a growing consensus throughout the country, reflected in a trend of legislative enactments,[3] acknowledges that an environment of confidentiality of treatment is vitally important to the successful operation of psychotherapy. California has embraced this view through the enactment of a broad, protective psychotherapist-patient privilege.

The nature of the actual interests involved in this case can only be properly evaluated against the California statutory background. Although petitioner, in pressing for judicial acceptance of a genuine and deeply held principle, seeks to cast the issue involved in this case in the broadest terms, we must properly address, in reality, a question of more modest dimensions. We do not face the alternatives of enshrouding the patient's communication to the psychotherapist in the black veil of absolute privilege or of exposing it to the white glare of absolute publicity. Our choice lies, rather, in the grey area.

Properly viewed, the broadest issue before our court is whether the Legislature, in attempting to accommodate the conceded need of confidentiality in the psychotherapeutic process with general societal needs of access to information for the ascertainment of truth in litigation, has unconstitutionally weighted its resolution in favor of disclosure by providing that a psychotherapist may be compelled to reveal relevant confidences of treatment when the patient tenders his mental or emotional

---

[3]Until 20 years ago, no statutes dealt specifically with the question of the privilege for psychotherapeutic communications; protection was available only under the terms of existing physician-patient privileges. Such privilege only applied to medical practitioners who fell within the terms of various state statutes; often psychiatrists were covered, but clinical psychologists, though using many of the same techniques of psychotherapy, were not. In the nineteen-fifties and sixties several states, responding to the demands of organized spokesmen of psychology, enacted new privilege statutes, often granting psychologist-patient communications much broader protection than was provided by existing physician-patient privileges. (See Ferster, "Statutory Summary of Physician-Patient Privileged Communication Laws" in Allen, Ferster & Ruben, Readings in Law & Psychiatry (1968) pp. 161-165.) In 1960 California enacted such a statute, providing: "[T]he confidential relations and communications between psychologist and client shall be placed upon the same basis as those provided by law between attorney and client . . . . " (Bus. & Prof. Code, § 2904 (since repealed).)

Although commentators who analyzed the need for a privilege in this specific area unanimously supported the position that greater protection be extended to communications of psychotherapeutic treatment (see, e.g., Louisell, *The Psychologist in Today's Legal World: Part II* (1957) 41 Minn.L.Rev. 731; Slovenko, *Psychiatry and a Second Look at the Medical Privilege* (1960) 6 Wayne L.Rev. 175), they pointed out the anomaly of affording more protection to patients of psychologists than to patients of psychiatrists, as most of the existing statutory schemes did. To eliminate this irrational distinction, California enacted the current psychotherapist-patient privilege (Evid. Code, § 1014) in 1965.

condition in issue in litigation. For the reasons discussed below, we conclude that, under a properly limited interpretation, the litigant-patient exception to the psychotherapist-patient privilege, at issue in this case, does not unconstitutionally infringe the constitutional rights of privacy of either psychotherapists or psychotherapeutic patients. As we point out, however, because of the potential of invasion of patients' constitutional interests, trial courts should properly and carefully control compelled disclosures in this area in the light of accepted principles.

I. ■ *The order requiring Dr. Lifschutz to answer appropriate questions concerning communications with a patient does not infringe the psychotherapist's constitutional rights.*

The primary contention of Dr. Lifschutz's attack on the judgment of contempt consists of the assertion of a constitutional right of a psychotherapist to absolute confidentiality in his communications with, and treatment of, patients. ■ Although, as we understand it, the alleged right draws its substance primarily from the psychological needs and expectations of patients, Dr. Lifschutz claims that the Constitution grants him an absolute right to refuse to disclose such confidential communications, regardless of the wishes of a patient in a particular case.[4] In separating the interest of the psychotherapist from that of the patient for the purposes of analyzing this contention, we conclude that the compelled disclosure of relevant information obtained in a confidential communication does not violate any constitutional privacy rights of the psychotherapist.

---

[4]Although at numerous points in his legal argument, petitioner asserts that his challenge is raised on behalf of his patient's rights as well as his own, the facts of this case demonstrate that the psychotherapist's interests and the patient's wishes do not always coincide on this issue. (See also *Commonwealth ex rel. Romanowicz* v. *Romanowicz* (1968) 213 Pa. Super. 382 [248 A.2d 238, 240] (psychiatrist compelled to testify if patient so desires).) Although under circumstances in which a patient cannot easily or effectively affirm his own rights, a physician may be granted standing to assert the constitutional rights of his patients (see, e.g., *Griswold* v. *Connecticut* (1965) 381 U.S. 479, 481 [14 L.Ed.2d 510, 512-513, 85 S.Ct. 1678]), in the instant case the patient, whose rights Dr. Lifschutz presumably seeks to protect, is a party to the action, and had full opportunity to challenge the disclosures which have so far been sought but declined to do so. Under these facts it would be inappropriate to find that Dr. Lifschutz could assert his patient's constitutional rights.

Moreover, petitioner has himself asserted that although the constitutional interests of his patient are inextricably involved, the constitutional right that he claims is a right of psychotherapists. At the contempt proceeding petitioner's attorney stated: "[F]rankly, I am very pleased that the particular patient, the plaintiff Housek, has taken no part in these proceedings because it presents the issue with perfect clarity. We are not on anyone's side here. We're just on the side of the doctor and medicine itself, because he is saying that no matter what the patient wants to do— . . . Now what I'm saying is that a doctor has an independent duty to all of his patients not to let any patient make him violate his oath that he has given to all patients at once. So it is his own privilege. . . . "

Petitioner founds his far-reaching constitutional claim on the United States Supreme Court decision of *Griswold* v. *Connecticut, supra,* 381 U.S. 479 [14 L.Ed.2d 510]. In *Griswold* the court struck down a state criminal statute prohibiting the use of contraceptives as an unconstitutional infringement of a marital right of privacy. Although, as we explain in section III, *infra,* the *Griswold* decision is relevant to an evaluation of the general scope of permissible intrusions into confidential relations between a patient and a psychotherapist, the decision does not support Dr. Lifschutz's claim for a constitutional right independent of the rights of individual patients.

Dr. Lifschutz apparently seeks support for his position in the fact that the defendants in *Griswold* were a licensed physician and the head of a birth control clinic who had counselled married couples on the use of contraceptives, rather than the married individuals themselves. The *Griswold* court quite explicitly explained, however, that the constitutional privacy interests and rights underlying its decision were those of the "patients" of the birth control clinic, rather than of physicians. "We think that appellants have standing to raise *the constitutional rights of married people* with whom they had a professional relationship. . . . *The rights of husband and wife,* pressed here, are likely to be diluted or adversely affected unless those rights are considered in a suit involving those who have this kind of confidential relation to them." (Italics added.) (381 U.S. at p. 481 [14 L.Ed.2d at p. 512].)[5] It is the depth and intimacy of the *patients'* revelations that give rise to the concern over compelled disclosure; the psychotherapist, though undoubtedly deeply involved in the communicative treatment, does not exert a significant privacy interest separate from his patient.[6] We cannot accept petitioner's reliance on the *Griswold* decision as establishing broad constitutional privacy rights of psychotherapists.

In addition to his claim as to a "right of privacy," petitioner urges that the provisions of the Evidence Code requiring a psychotherapist to reveal confidential matters under some circumstances unconstitutionally impair

---

[5]Since the *Griswold* defendants' "criminal" activities included the general dissemination of information concerning contraceptives and birth control, it has been persuasively argued that the convictions may have contravened the First Amendment rights of the individual physician-defendants. (See, e.g., Dixon, *The Griswold Penumbra: Constitutional Charter For an Expanded Law of Privacy* (1965) 64 Mich. L.Rev. 197, 213.) The Supreme Court, however, chose not to address that problem.

[6]Indeed, in many instances a patient may desire to have a psychotherapist testify as to confidential communications. (See, e.g., *Hampton* v. *Hampton* (1965) 241 Ore. 277 [405 P.2d 549].) The granting of petitioner's broad contention could foreclose access to psychotherapeutic sessions even when the patient has no desire to preserve his "privacy."

the practice of his profession. This position rests on two distinct legal contentions: first, that the impairment is so severe as to constitute an unconstitutional "taking" of a valuable property right, the doctor's right to practice psychotherapy; and second, that compelled disclosure of any psychotherapeutic communication renders the continued practice of psychotherapy impossible and thus unconstitutionally constricts the realm of available medical treatment. ■ Although psychotherapists should, of course, be entitled to the constitutional protections requisite to the right to practice their profession (see *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 75 [64 Cal.Rptr. 785, 435 P.2d 553]), we doubt that the disclosure involved here goes so far as to constitute the claimed unconstitutional deprivation of that right.

Insofar as petitioner's argument rests on the economic loss that psychotherapists may suffer as a result of the disclosure requirement, his position runs contra to the current trend of constitutional adjudication involving the regulation of economic interests. Legal requirements prescribing mandatory disclosure of confidential business records are of course regular occurrences (see, e.g., *Shapiro* v. *United States* (1948) 335 U.S. 1, 32-33 [92 L.Ed. 1787, 1806-1807, 68 S.Ct. 1375]; *Hickman* v. *Taylor* (1947) 329 U.S. 495, 511-513 [91 L.Ed. 451, 462-463, 67 S.Ct. 385]; *In re Sidebotham* (1938) 12 Cal.2d 434, 436 [85 P.2d 453]), and although all compelled disclosures may interfere to some extent with an individual's performance of his work, such requirements have been universally upheld so long as the compelled disclosure is reasonable in light of a related and important governmental purpose. (E.g., *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 394 [15 Cal.Rptr. 90, 364 P.2d 266].) ■ In order to facilitate the ascertainment of truth and the just resolution of legal claims, the state clearly exerts a justifiable interest in requiring a businessman to disclose communications, confidential or otherwise, relevant to pending litigation. (Cf., e.g., *Wilson* v. *United States* (1911) 221 U.S. 361, 372-376 [55 L.Ed. 771, 776-777, 31 S.Ct. 538]; *Blair* v. *United States* (1919) 250 U.S. 273, 279-282 [63 L.Ed. 979, 981, 983, 39 S.Ct. 468].) ■■ Although we appreciate, as petitioner suggests, that because of the peculiar nature of psychotherapy, the debilitating effect of disclosure is particularly acute, the incidental infringement of the psychotherapist's economic interest in such practice does not succumb to constitutional challenge so long as the circumstances of disclosure are properly confined to serve a legitimate governmental interest. (Cf. *Day-Brite Lighting, Inc.* v. *Missouri* (1952) 342 U.S. 421, 423-424 [96 L.Ed. 469, 472-473, 72 S.Ct. 405]; *Nebbia* v. *New York* (1934) 291 U.S. 502, 537 [78 L.Ed. 940, 957, 54 S.Ct. 505].) Moreover, because, as we explain below, the patient-litigant exception at issue

involves only that special instance in which a patient has chosen to forego the confidentiality of the privilege, we question whether the deterrence of patients and the impairment to the practice of psychotherapy will be as great as petitioner anticipates.

The second basis of petitioner's contention raises a more serious problem. Petitioner claims that if the state is authorized to compel disclosure of some psychotherapeutic communications, psychotherapy can no longer be practiced successfully.[7] He asserts that the unique nature of psychotherapeutic treatment, involving a probing of the patient's subconscious thoughts and emotions, requires an environment of total confidentiality and absolute trust. Petitioner claims that unless a psychotherapist can truthfully assure his patient that all revelations will be held in strictest confidence and never disclosed, patients will be inhibited from participating fully in the psychotherapeutic process and proper treatment will be impossible. Petitioner concludes that the patient-litigant exception involved here conflicts with the preservation of an environment of absolute confidentiality and unconstitutionally constricts the field of medical practice.

Petitioner's argument, resting as it does on assertions of medical necessity, exemplifies the type of question to which the judiciary brings little expertise. Although petitioner has submitted affidavits of psychotherapists who concur in his assertion that total confidentiality is essential to the practice of their profession, we cannot blind ourselves to the fact that the practice of psychotherapy has grown, indeed flourished, in an environment of a non-absolute privilege. No state in the country recognizes as broad a privilege as petitioner claims is constitutionally compelled.[8] Whether psychotherapy's development has progressed only because patients are ignorant of the existing legal environment can only be a matter for speculation; psychotherapists certainly have been aware of the limitations of their recognized privilege for some time. (See, e.g., Hollender,

---

[7]Petitioner's contention that the recognition of a privilege is necessary to the preservation of a given occupation or profession is by no means unique to psychotherapy. In the past, organized occupational groups of journalists, accountants, and social workers, among others, have sought the establishment of a legal privilege and have proclaimed, on principle, that required revelation of information received in confidence would mean the destruction of their calling. (See generally, 8 Wigmore, Evidence (McNaughton rev. 1961) § 2286, pp. 532-537.) In many instances such organized groups have been able to convince state legislatures of the wisdom of their position and as a result statutory privileges have been created; the broad psychotherapist-patient privilege enacted in California is such an example.

[8]Indeed, only six states have any laws specifically granting to the psychiatric relationship any special protection, over and above that given to medical communications generally. (See Slawson, *Patient-Litigant Exception: Hazard to Psychotherapy* (1969) 21 Arch. Gen. Psychiat. 347, 348.)

Privileged Communication and Confidentiality (1965) 26 Diseases of the Nervous System 169 (paper and round table discussion); Sidel, *Confidential Information and the Physician* (1961) 264 New England J. of Med. 1133, 1136.)

Petitioner's broad assertion, moreover, overlooks the limited nature of the intrusion into psychotherapeutic privacy actually at issue in this case. ■ As we explain more fully in Part III *infra,* the patient-litigant exception of section 1016 of the Evidence Code compels disclosure of only those matters which the patient himself has chosen to reveal by tendering them in litigation. We do not know, of course, to what extent patients are deterred from seeking psychotherapeutic treatment by the knowledge that if, at some future date, they choose to place some aspect of their mental condition in issue in litigation, communications relevant to that issue may be revealed. We can only surmise that an understanding of the limits of section 1016, and the realization that the patient retains control over subsequent disclosure, may provide a measure of reassurance to the prospective patient.

The statutory provisions challenged here do not attempt to narrow the scope of psychotherapeutic treatment, by proscribing, for example, the discussion of certain subjects (cf. *Poe* v. *Ullman* (1961) 367 U.S. 497, 513-515 [6 L.Ed.2d 989, 1001-1003, 81 S.Ct. 1752] (Douglas, J., dissenting) (state statute barring advice on the use of contraceptives)). ■ Instead, the provisions are intended to serve the important state interest of facilitating the ascertainment of truth in legal proceedings. Although petitioner argues that, as a matter of social as well as medical policy, the benefits to be derived from a broadening of the existing privilege would outweigh the detriments resulting from a narrowing of evidence available in litigation, the balancing of those alternatives remains with the Legislature.

II. ■ *The presence of a legislatively created absolute clergyman-penitent privilege does not render the absence of such an absolute psychotherapist-patient privilege a denial of equal protection.*

Section 1034 of the Evidence Code provides that: "a clergyman . . . has a privilege to refuse to disclose a penitential communication if he claims the privilege"; the code provides no exceptions to the clergyman-penitent privilege comparable to the numerous exceptions to the psychotherapist-patient privilege. (See Evid. Code, §§ 1016-1026.) Petitioner contends that the Legislature, in so distinguishing between clergymen and

psychotherapists, has denied psychotherapists the equal protection of the laws in violation of the Fourteenth Amendment.

The potential range of confidential communications spans a large area: a conducive environment for such communications may be produced by numerous social (marriage), business (attorney-client), medical (physician-patient), or spiritual (clergyman-penitent) settings. Although the preservation of each of these varied relationships compels some measure of confidentiality, the differing degrees of non-disclosure essential to the relationship and the value of preserving the particular confidential aspect involved, has led states to adopt a variety of different kinds of privileges. The distinction drawn in the California Evidence Code between clergymen and participants in other privileged communications parallels the distinction recognized in the 44 states that have established a distinct clergyman-penitent or "priest-penitent" privilege. (See generally, 8 Wigmore, Evidence, *supra,* § 2395, at pp. 873-877, and Supp., at pp. 53-54.)

Petitioner maintains, however, that, given the purpose of the clergyman-penitent privilege, the distinction between clergymen and psychotherapists cannot stand. Dr. Lifschutz characterizes the "modern" purpose of the clergyman-penitent privilege as fostering a "sanctuary for the disclosure of emotional distress": as so characterized, relevant distinctions between clergymen and psychotherapists do diminish. Petitioner's portrayal of the clergyman-penitent privilege, however, while perhaps identifying one of the supporting threads of the statutory provision, does not reflect a complete analysis of the foundation of the privilege.

Realistically, the statutory privilege must be recognized as basically an explicit accommodation by the secular state to strongly held religious tenets of a large segment of its citizenry. As the Law Revision Commission Comment accompanying the adoption of California's current privilege explains: "At least one underlying reason seems to be that the law will not compel a clergman to violate—nor punish him for refusing to violate—the tenets of his church which require him to maintain secrecy as to confidential statements made to him in the course of his religious duties." Wigmore, in his treatise, similarly relates the purpose of the privilege in a question and answer format: "Does the penitential relation deserve recognition and countenance? In a state where toleration of religion exists by law, and where a substantial part of the community professes a religion practising a confessional system, this question must be answered in the affirmative." (8 Wigmore, Evidence, *supra,* § 2396 at p. 878; see also Stoyles, *The Dilemma of the Constitutionality of the Priest-Penitent Privilege—The Application of the Religion Clauses* (1967) 29 U.Pitt.L.Rev. 27, 51.)

Recognizing that the toleration of religious beliefs and practices forms the basis for this privilege, we cannot say that the Legislature acted irrationally in granting the privilege to clergymen and not to psychotherapists. Although in some circumstances clergymen and psychotherapists perform similar functions and serve similar needs, fundamental and significant differences remain. While many psychotherapists are no doubt strongly committed to the "tenets" of their profession,[9] as indeed Dr. Lifschutz has exhibited by his determined action in the instant proceeding, the source of this commitment can be reasonably distinguished from the distinctive religious conviction out of which the penitential privilege flows.

We have no occasion in the instant case to address the contention, which petitioner obliquely proffers, that because of its "accommodation of religion" purpose, the clergyman-penitent privilege itself frames an unconstitutional establishment of religion. Petitioner does not seek to compel disclosure of a penitential communication, nor will he achieve any benefit from a decision invalidating the statutory privilege. Under these circumstances this court cannot properly comment on this potentially difficult constitutional question.[10]

III. *Under the facts of this case petitioner could assert no statutory authority to refuse to comply with requested disclosures.*

Although, as we have discussed above, Dr. Lifschutz on his own behalf can claim no constitutional privilege to avoid disclosure, he may in some circumstances assert the statutory privilege of his patient.[11] Evidence Code section 1012 recognizes communications between patient and psychotherapist, diagnosis by the psychotherapist, and advice given during the

---

[9]We note that this court has not been apprised of any present, established "tenet" of the medical profession that would be violated by petitioner's compliance with the order of the trial court. Section 9 of the "Principles of Medical Ethics" adopted by the American Medical Association, which petitioner submitted to the trial court, proclaims: "A physician may not reveal the confidences entrusted to him in the course of medical attendance, or the deficiencies he may observe in the character of patients, *unless he is required to do so by law* or unless it becomes necessary in order to protect the welfare of the individual or of the community." (Italics added.) Although there has been some criticism of this present principle (see, e.g., Sidel, *Confidential Information and the Physician, supra,* 264 New England J. of Med. 1133), we are not aware of any modification of the "official" principle of confidentiality.

[10]See generally, Stoyles, *The Dilemma of the Constitutionality of the Priest-Penitent Privilege—The Application of the Religion Clauses, supra,* 29 U.Pitt.L. Rev. 27.

[11]The statutory privilege established in section 1014 of the Evidence Code is a privilege of the patient, not of the psychotherapist. (Evid. Code, § 1013; cf. *City & County of San Francisco* v. *Superior Court* (1951) 37 Cal.2d 227, 233 [231 P.2d 26].)

therapy relationship as privileged communications. Section 1015 provides that: "[t]he psychotherapist who received or made a communication subject to the privilege under this article shall claim the privilege whenever he is present when the communication is sought to be disclosed and is authorized to claim the privilege under subdivision (c) of Section 1014." Section 1014, subdivision (c), indicates that the psychotherapist cannot claim the privilege of the patient "if there is no holder of the privilege in existence or if he is otherwise instructed by a person authorized to permit disclosure." The record in the present case shows no express instructions from plaintiff Housek directing Dr. Lifschutz to decline the privilege against disclosure. Thus, under Evidence Code section 1015 Dr. Lifschutz could generally assert the privilege of his patient to prevent disclosure of privileged communications.

The psychotherapist, however, cannot assert his patient's privilege if that privilege has been waived or if the communication in question falls within the statutory exceptions to the privilege. Evidence Code section 912, subdivision (a), provides that: " . . . the right of any person to claim a privilege provided by Section . . . 1014 (psychotherapist-patient privilege) . . . is waived with respect to a communication protected by such privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to such disclosure made by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating his consent to the disclosure, including his failure to claim the privilege in any proceeding in which he has the legal standing and opportunity to claim the privilege."

Since Housek, the holder of the privilege (see Evid. Code, § 1013), disclosed at a prior deposition that he had consulted Dr. Lifschutz for psychiatric treatment, he has waived whatever privilege he might have had to keep such information confidential. (Cf. *In re Kaplan* (1960) 8 N.Y.2d 214 [203 N.Y.S.2d 836, 168 N.E.2d 660].)

The questions posed to Dr. Lifschutz, however, have inquired only into whether he treated Mr. Housek, and whether he possessed records regarding this patient. Defendant has not yet asked Dr. Lifschutz about the nature of his treatment of the plaintiff, his diagnosis, or the content of any communication. Certainly, in admitting the existence of a psychotherapist-patient relationship, plaintiff has not disclosed "a significant part of the communication" (Evid. Code, § 912) between himself and Dr. Lifschutz so as to waive his right subsequently to claim the privilege as to other elements of the communication.

Defendant contended in the superior court, however, that *any* com-

munication between the plaintiff and Dr. Lifschutz has lost its privileged status because the plaintiff has filed a personal injury action in which he claims recovery for "mental and emotional distress." Defendant relies on section 1016 of the Evidence Code, the patient-litigant exception to the psychotherapist-patient privilege, which provides that: "[t]here is no privilege under this article as to a communication relevant to an issue concerning the mental or emotional condition of the patient if such issue has been tendered by: (a) the patient . . . ." To avoid the necessity for further contempt proceedings or delaying appellate review in the instant case, we have considered whether defendant has accurately identified the proper reach of the patient-litigant exception.

■ As we explain more fully below, the patient-litigant exception allows only a limited inquiry into the confidences of the psychotherapist-patient relationship, compelling disclosure of only those matters directly relevant to the nature of the specific "emotional or mental" condition which the patient has voluntarily disclosed and tendered in his pleadings or in answer to discovery inquiries. ■ Furthermore, even when confidential information falls within this exception, trial courts, because of the intimate and potentially embarrassing nature of such communications, may utilize the protective measures at their disposal to avoid unwarranted intrusions into the confidences of the relationship.

In interpreting this exception we are necessarily mindful of the justifiable expectations of confidentiality that most individuals seeking psychotherapeutic treatment harbor. As has been aptly pointed out by Judge Edgerton in *Taylor* v. *United States* (D.C. Cir. 1955) 222 F.2d 398, 401 (quoting from Guttmacher, M., et al., Psychiatry and the Law (1952) p. 272), " 'The psychiatric patient confides more utterly than anyone else in the world. He exposes to the therapist not only what his words directly express; he lays bare his entire self, his dreams, his fantasies, his sins, and his shame. Most patients who undergo psychotherapy know that this is what will be expected of them, and that they cannot get help except on that condition. . . . It would be too much to expect them to do so if they knew that all they say—and all that the psychiatrist learns from what they say—may be revealed to the whole world from a witness stand.' "

We believe that a patient's interest in keeping such confidential revelations from public purview, in retaining this substantial privacy, has deeper roots than the California statute and draws sustenance from our constitutional heritage. In *Griswold* v. *Connecticut, supra,* 381 U.S. 479, 484 [14 L.Ed.2d 510, 514], the United States Supreme Court declared that "Various guarantees [of the Bill of Rights] create zones of privacy," and we believe that the confidentiality of the psychotherapeutic session falls

within one such zone. (Cf. *People* v. *Belous* (1969) 71 Cal.2d 954, 963 [80 Cal.Rptr. 354, 458 P.2d 194].) Although *Griswold* itself involved only the marital relationship, the open-ended quality of that decision's rationale evidences its far-reaching dimension. (See generally, Dixon, *The Griswold Penumbra: Constitutional Charter for An Expanded Law of Privacy, supra,* 64 Mich.L.Rev. 197.)[12] Indeed, the decision's concern for valued aspects of individual privacy may ultimately aid in protecting man from the dehumanization of an ever-encroaching technological environment. The retention of a degree of intimacy in interpersonal relations and communications lies at the heart of the broad rationale of *Griswold;* the opinion itself significantly followed the teachings of *NAACP* v. *Alabama* (1958) 357 U.S. 449 [2 L.Ed.2d 1488, 78 S.Ct. 1163], which struck down a state statute requiring an association to disclose its membership list as an unconstitutional impingement upon the members' rights of privacy and anonymity. (Cf. *Talley* v. *California* (1960) 362 U.S. 60 [4 L.Ed.2d 559, 80 S.Ct. 536].)

Even though a patient's interest in the confidentiality of the psychotherapist-patient relationship rests, in part, on constitutional underpinnings, all state "interference" with such confidentiality is not prohibited. In section 1016 we do not deal with a provision which seeks to proscribe the association of psychotherapist and patient entirely,[13] but instead we encounter a provision carefully tailored to serve the historically important state interest of facilitating the ascertainment of truth in connection with legal proceedings. (See, e.g., *Blair* v. *United States* (1919) 250 U.S. 273, 279-281 [63 L.Ed. 979, 981-983, 39 S.Ct. 468]; *Wilson* v. *United States* (1911) 221 U.S. 361, 372-373 [55 L.Ed. 771, 776, 31 S.Ct. 538]; *Blackmer* v. *United States* (1932) 284 U.S. 421 [76 L.Ed. 375, 52 S.Ct. 252].)[14] In the past this state interest has been viewed as

---

[12]The breadth of the principles of privacy and individual freedom recognized in *Griswold* is illustrated by the variety of the cases which have subsequently embraced that decision's conclusions. (See, e.g., *Stanley* v. *Georgia* (1969) 394 U.S. 557, 564 [22 L.Ed.2d 542, 549, 89 S.Ct. 1243] (right to view all books and films in the privacy of one's home); *Roberts* v. *Clement* (E.D.Tenn. 1966) 252 F.Supp. 835, 848 (Darr, J., concurring) (right to practice nudism in private); *Finot* v. *Pasadena City Board of Education* (1967) 250 Cal.App.2d 189, 197-198 [58 Cal.Rptr. 520] (right of adult teacher to wear beard); cf. *Jessin* v. *County of Shasta* (1969) 274 Cal.App.2d 737, 748 [79 Cal.Rptr. 359] (right to obtain voluntary sterilization).)

[13]Cf. *Roberts* v. *Clement,* supra, 252 F.Supp. 835, 849 (Darr, J., concurring) (state statute prohibiting the practice of nudism unconstitutional under *Griswold*).

[14]The justification for compelling disclosure of relevant psychotherapeutic communications when the patient himself has raised an issue of his mental condition has been recognized even by commentators who are strongly in favor of broadening the current psychotherapist-patient privilege. Two "model" psychotherapist-patient priv-

substantial enough to compel the disclosure of a great variety of confidential material. (See, e.g., *Chronicle Publishing Co.* v. *Superior Court* (1960) 54 Cal.2d 548, 574 [7 Cal.Rptr. 109, 354 P.2d 637]; *Green* v. *Superior Court* (1963) 220 Cal.App.2d 121 [33 Cal.Rptr. 604]; *Tatkin* v. *Superior Court* (1958) 160 Cal.App.2d 745, 753-754 [326 P.2d 201]; *Garland* v. *Torre* (2d Cir. 1958) 259 F.2d 545, 548-549, cert. den. 358 U.S. 910 [3 L.Ed.2d 231, 79 S.Ct. 237].) Moreover, since the exception compels disclosure only in cases in which the patient's own action initiates the exposure, "intrusion" into a patient's privacy remains essentially under the patient's control. As such, we find no constitutional infirmity in it.

Although no previous cases have arisen under the patient-litigant exception to the psychotherapist-patient privilege, decisions applying an analogous exception to the physician-patient privilege[15] have identified two distinct grounds for the exception. First, the courts have noted that the patient, in raising the issue of a specific ailment or condition in litigation, in effect dispenses with the confidentiality of that ailment and may no longer justifiably seek protection from the humiliation of its exposure.[16] Second, the exception represents a judgment that, in all fairness, a patient should not be permitted to establish a claim while simultaneously foreclosing inquiry into relevant matters.[17] ▮ As we explained in *City & County of San Francisco* v. *Superior Court, supra,* 37 Cal.2d 227, 232

ilege acts, drafted by such proponents, have included a provision recognizing a patient-litigant exception. (See *Model Psychotherapist-Patient Privilege* (1968) 4 Harv.J. Legis. 307, 322; Fisher, *The Psychotherapeutic Profession and the Law of Privileged Communication* (1964) 10 Wayne L.Rev. 609, 644.)

[15]The present patient-litigant exception to the physician-patient privilege (Evid. Code, § 996) which parallels the exception to the psychotherapist-patient privilege precisely, superseded section 1881, subdivision 4, of the Code of Civil Procedure, the initial patient-litigant exception enacted in 1917 and the section under which most of the relevant case law arose. Section 1881, subdivision 4, limited the physician-patient privilege by providing: "[W]here any person brings an action to recover damages for personal injuries, such action shall be deemed to constitute a consent by the person bringing said action that any physician who has prescribed for or treated said person and *whose testimony is material in said action* shall testify." (Italics added.)

[16]See *Moreno* v. *New Guadalupe Min. Co.* (1917) 35 Cal.App. 744, 755 [170 P. 1088] ("clearly a patient should not be permitted to describe 'at length to the jury in a crowded courtroom the details of his supposed ailment, and then neatly suppress the available proof of his falsities by wielding a weapon, nominally termed a privilege.' (4 Wigmore, § 2389, p. 3360.)").

[17]Cf. *Koump* v. *Smith* (1969) 25 N.Y.2d 287, 294 [303 N.Y.S.2d 858, 864, 250 N.E.2d 857] ("A party should not be permitted to assert a mental or physical condition in seeking damages or in seeking to absolve himself from liability and at the same time assert the privilege in order to prevent the other party from ascertaining the truth of the claim and the nature and extent of the injury or condition."); *Schlagenhauf* v. *Holder* (1964) 379 U.S. 104, 126 [13 L.Ed.2d 152, 168, 85 S.Ct. 234] (Douglas, J., dissenting); 4 Harv.J. Legis. 307, 323, *supra.*

(the *Catton* case), "The whole purpose of the [physician-patient] privilege is to preclude the humiliation of the patient that might follow disclosure of his ailments. When the patient himself discloses those ailments by bringing an action in which they are in issue, there is no longer any reason for the privilege. The patient-litigant exception precludes one who has placed in issue his physical condition from invoking the privilege on the ground that disclosure of his condition would cause him humiliation. He cannot have his cake and eat it too."

Although defendant reads the above quoted language of the *Catton* case as implying that the patient-litigant exception contemplates an automatic, complete waiver of privilege whenever a patient institutes a claim for any physical or mental injury, we find nothing in either the rationale of the exception as explained in the *Catton* case, or in the cases applying the exception,[18] to justify the breadth of this description. In previous physician-patient privilege cases the exception has been generally applied only to compel disclosure of medical treatment and communication concerning the very injury or impairment that was the subject matter of the litigation.[19] There is certainly nothing to suggest that in the context of the more liberal psychotherapist-patient privilege this exception should be given a broader reading.[20]

[18]See, e.g., *Phillips* v. *Powell* (1930) 210 Cal. 39, 42 [290 P. 441] ("Pursuant to the provisions of section 1881, subdivision 4 of the Code of Civil Procedure, the bringing of the action to recover damages for personal injuries constitutes a waiver of the privilege, provided the testimony is material to the issues"); *San Francisco Unified School Dist.* v. *Superior Court* (1961) 55 Cal.2d 451, 454 [11 Cal.Rptr. 373, 359 P.2d 925, 82 A.L.R.2d 1156] ("when the patient himself discloses *those ailments* by bringing an action in which they are in issue, there is no longer any reason for the privilege." (Italics added.))

[19]For example, in *Ballard* v. *Pacific Greyhound Lines* (1946) 28 Cal.2d 357, 360 [170 P.2d 465], the plaintiff, injured in a bus accident, had consulted a physician concerning the injuries she sustained therein. When the patient later sued the bus company for damages, the court permitted the defendant to examine the physician concerning the injuries of which plaintiff complained, finding the patient-litigant exception directly applicable. (Accord, *San Francisco Unified School Dist.* v. *Superior Court, supra,* 55 Cal.2d 451, 454 (exception applicable to doctor who had been consulted "to diagnose and treat [the plaintiff] for the injuries for which recovery is now sought").)

[20]Our reliance on precedents rendered in the context of the physician-patient privilege is not intended to suggest that authorities involving the physician-patient privilege will always be helpful in resolving issues concerning the psychotherapist-patient privilege. In the past the physician-patient privilege has been the subject of rather severe criticism (see, e.g., Chafee, *Privileged Communications: Is Justice Served or Obstructed by Closing the Doctor's Mouth on the Witness Stand?* (1943) 52 Yale L.J. 607; 8 Wigmore, Evidence, *supra,* § 2380a, at pp. 828-832), and in response the application of the privilege has been limited in a variety of circumstances (see, e.g., Evid. Code, §§ 998, 999, 1007). The psychotherapist-patient privilege, on the other hand, won legislative recognition in the face of legal antipathy toward privileges generally (see Louisell, *The Psychologist in Today's Legal World: Part II, supra,* 41

If the provision had as broad an effect as is suggested by petitioner, it might effectively deter many psychotherapeutic patients from instituting any general claim for mental suffering and damage out of fear of opening up all past communications to discovery. This result would clearly be an intolerable and overbroad intrusion into the patient's privacy, not sufficiently limited to the legitimate state interest embodied in the provision and would create opportunities for harassment and blackmail.

In light of these considerations, the "automatic" waiver of privilege contemplated by section 1016 must be construed not as a complete waiver of the privilege but only as a limited waiver concomitant with the purposes of the exception. Under section 1016 disclosure can be compelled only with respect to *those mental conditions* the patient-litigant has "disclose[d] . . . by bringing an action in which *they* are in issue" (*City & County of San Francisco* v. *Superior Court, supra,* 37 Cal.2d 227, 232); communications which are not directly relevant to those specific conditions do not fall within the terms of section 1016's exception and therefore remain privileged. Disclosure cannot be compelled with respect to other aspects of the patient-litigant's personality even though they may, in some sense, be "relevant" to the substantive issues of litigation.[21] The patient thus is not obligated to sacrifice all privacy to seek redress for a specific mental or emotional injury; the scope of the inquiry permitted depends upon the nature of the injuries which the patient-litigant himself has brought before the court.

In some situations, the patient's pleadings may clearly demonstrate that his entire mental condition is being placed in issue and that records of past psychotherapy will clearly be relevant. Thus in *In re Cathey* (1961) 55 Cal.2d 679 [12 Cal.Rptr. 762, 361 P.2d 426], for example, a mental

---

Minn.L.Rev. 731, 731-732); the Legislature acknowledged that the unique nature of psychotherapeutic treatment required and justified a greater degree of confidentiality than was legally afforded other medical treatment (see Legislative Committee Com. to Evid. Code, § 1014). Even commentators who concurred in the criticism of the general physician-patient privilege noted that the psychotherapeutic privilege rested on a much sounder basis and supported its adoption. (See, e.g., *Louisell, supra,* at pp. 740-746.) The differences that exist between these two medically oriented privileges caution against blind application of the precedents of the physician-patient privilege in future psychotherapist-patient privilege cases.

[21]Thus in the instant case, for example, defendant would not be authorized to undertake an examination of psychotherapeutic communications to determine if the plaintiff has ever exhibited aggressive tendencies or had other personal attributes that might be related to the assault. The plaintiff has not disclosed such elements of his mental condition merely by instituting an action for damages resulting from an assault and thus the exception of section 1016 is not applicable. (Cf. *Carlton* v. *Superior Court* (1968) 261 Cal.App.2d 282, 289-290 [67 Cal.Rptr. 568]; *Koump* v. *Smith, supra,* 25 N.Y.2d 287, 294, 299 [303 N.Y.S.2d 858, 864, 868-869, 250 N.E.2d 857].)

patient confined in a prison hospital sought release contending, inter alia, that he was not a "dangerous" or "violent" individual as the state mental health officials asserted; when the officials offered Cathey's medical records to substantiate their position, he claimed such records were privileged. This court, analogizing the facts before it to those of the patient-litigant exception to the physician-patient privilege,[22] found that "petitioner himself caused his mental condition to be put in issue by his application for habeas corpus and the averments of his brief . . . ." (55 Cal.2d at p. 691.) In such a case, section 1016 will of course be applicable.

In other cases, however, the determination of the specific "mental condition" in issue may present more complex problems. The difficulties involved in analyzing the applicability of the exception in the instant case may be illustrative. The plaintiff's complaint, containing the typical allegations of "mental and emotional distress" arising out of a physical assault, does not specifically identify the nature of the "mental or emotional condition" at issue. In incorporating this allegation in his complaint, plaintiff obviously neither disclosed his entire medical history of treatment for mental or emotional conditions nor realistically waived his interest in maintaining the confidentiality of that treatment. The generality of the claim, however, does create the possibility that some feature of plaintiff's psychological history will be directly relevant to the determination of whether his emotional or mental distress can be properly attributed to the alleged assault. Although we doubt that the 10-year-old therapeutic treatment sought to be discovered from Dr. Lifschutz would be sufficiently relevant to a typical claim of "mental distress" to bring it within the exception of section 1016, we cannot determine from the present state of the record whether plaintiff's "mental and emotional" distress is merely the "normal" distress experienced as a result of physical assault or whether it includes unusual or particularly serious elements upon which prior history may be directly relevant.

Because only the patient, and not the party seeking disclosure, knows both the nature of the ailments for which recovery is sought and the general content of the psychotherapeutic communications, the burden rests upon the patient initially to submit some showing that a given confidential communication is not directly related to the issue he has tendered to the court. (Cf. Evid. Code, § 404 (person claiming privilege against incrimination bears burden of showing proffered evidence might tend to incriminate him).) A patient may have to delimit his claimed

---

[22]The present psychotherapist-patient privilege was not yet enacted at the time *Cathey* was decided. Because the then existing statutory "patient-litigant" exception was, by its terms, limited to personal injury actions, the court reached its decision by analogy rather than by direct application of a statutory provision.

"mental or emotional distress" or explain, in general terms, the object of the psychotherapy[23] in order to illustrate that it is not reasonably probable that the psychotherapeutic communications sought are directly relevant to the mental condition that he has placed in issue. In determining whether communications sufficiently relate to the mental condition at issue to require disclosure, the court should heed the basic privacy interests involved in the privilege (cf. *Wiesenberger* v. *W. E. Hutton & Co.* (S.D.N.Y. 1964) 35 F.R.D. 556, 557-558); in general, the statutory psychotherapist-patient privilege "is to be liberally construed in favor of the patient." (Cf. *Carlton* v. *Superior Court, supra,* 261 Cal.App.2d 282, 288; *Newell* v. *Newell* (1956) 146 Cal.App.2d 166, 177 [303 P.2d 848].)

Even when the confidential communication is directly relevant to a mental condition tendered by the patient, and is therefore not privileged, the codes provide a variety of protections that remain available to aid in safeguarding the privacy of the patient. When inquiry into the confidential relationship takes place before trial during discovery, as in the instant case, the patient or psychotherapist may apply to the trial court for a protective order to limit the scope of the inquiry or to regulate the procedure of the inquiry so as to best preserve the rights of the patient. Section 2019, subdivision (b), subsection (1), of the Code of Civil Procedure grants the court broad discretion to issue "any . . . order which justice requires to protect the party or witness from annoyance, embarrassment or oppression." Section 2019, subdivision (b), subsection (1), specifically enumerates a number of protective orders that might be particularly helpful to a patient-litigant. For example, the section provides that, upon good cause shown, the court may direct that at the oral deposition[24] "[1] certain matters shall not be inquired into or [2] that the scope of the examination shall be limited to certain matters, books, [or] documents . . . or [3] that the examination shall be held with no one present except the parties to the action and their . . . counsel or [4] that after being sealed the deposition shall be opened only by order of the

---

[23]Although ordinarily a patient cannot be required to disclose privileged information in order to claim the privilege (Evid. Code. § 915, subd. (a)), because the privileged status of psychotherapeutic communications under the patient-litigant exception depends upon the *content* of the communication, a patient may have to reveal some information about a communication to enable the trial judge to pass on his claim of irrelevancy. Upon such revelation, the trial judge should take necessary precautions to protect the confidentiality of these communications; for example, he might routinely permit such disclosure to be made *ex parte* in his chambers. (Compare the procedure suggested in Evid. Code, § 915, subd. (b).) (See also *Developments in the Law—Discovery* (1964) 74 Harv.L.Rev. 940, 1017-1018.)

[24]Although section 2019, subdivision (b), only applies to oral deposition, other discovery sections specifically provide that similar protective orders can be obtained to limit inquiries sought under their discovery devices. (See § 2020, subd. (d); § 2030, subd. (b); § 2033, subd. (a).)

court. . . ." (Bracketed numbers added.) (See *Chronicle Publishing Co.* v. *Superior Court, supra,* 54 Cal.2d 548, 575; cf. *Reynolds Metals Co.* v. *Yturbide* (9th Cir. 1958) 258 F.2d 321, 333, cert. den. 358 U.S. 840 [3 L.Ed.2d 76, 79 S.Ct. 66].) Such a protective order may be sought at any time during the deposition, and, in appropriate cases, the trial court may issue such an order on its own motion. (Code Civ. Proc., § 2019, subd. (d).)

When the questioning of the psychotherapist or patient as to confidential communications occurs at the trial itself, the danger of publicity and embarrassment is increased. Of course, unless the information sought is directly relevant to the issue as revealed by the evidence at trial, the communication is privileged and no disclosure can be compelled. ▮ Moreover, as with any evidence, the court retains discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . (b) create substantial danger of undue prejudice. . . ." (Evid. Code, § 352.)[25] In this area, the careful exercise of this discretion is necessary to provide substantial protection for the patient's legitimate interests;[26] without this element of court supervision intensive examinations of psychotherapists and patients may often ultimately result in substantially more harm than benefit.

In sum, we conclude that no constitutional right enables the psychotherapist to assert an absolute privilege concerning all psychotherapeutic communications. We do not believe the patient-psychotherapist privilege should be frozen into the rigidity of absolutism. So extreme a conclusion neither harmonizes with the expressed legislative intent nor finds a clear source in constitutional law. Such an application would lock the patient into a vice which would prevent him from waiving the privilege without the psychotherapist's consent. The question whether such a ruling would have the medical merit claimed by petitioner must be addressed to the Legislature; we can find no basis for such a ruling in legal precedent or principle.

[25]Necessary information will often be accessible without delving deeply into specific intimate factual circumstances and such searching probes ought to be avoided whenever possible. The psychotherapist's general conclusions about specific emotional symptoms will often suffice to convey the needed information while preserving the patient's dignity and interest in privacy.

[26]The draftsmen of two separate versions of "model" legislation in this field each suggested that only a "conditional" patient-litigant exception be adopted; under this suggestion, disclosure would be compelled only upon a finding of the court that it would be in "the best interests of justice." (See Fisher, *The Psychotherapeutic Profession and the Law of Privileged Communications, supra,* 10 Wayne L.Rev. 609, 644; *Model Psychotherapist-Patient Privilege, supra,* 4 Harv.J. Legis. 307, 322.) Similar protection can be afforded under the California statutory scheme through a sensitive exercise of the trial court's discretionary authority.

Furthermore, the existence of a broad statutory privilege in clergymen does not deny psychotherapists the equal protection of the laws. Finally, although we recognize the legitimacy and importance of the concern over governmentally sanctioned intrusions into a patient's psychotherapeutic history, the patient-litigant exception, as properly limited, does not necessarily entail an overbroad intrusion into the patient's privacy.

Inasmuch as plaintiff had already disclosed that he had consulted Dr. Lifschutz for psychotherapeutic treatment, petitioner could not properly have refused to answer at least that question concerning the communications; since neither plaintiff nor the psychotherapist has as yet made any claim that the subpenaed records are not directly relevant to the specific "mental and emotional" injuries for which plaintiff is claiming relief, Dr. Lifschutz had no right to refuse to produce the records. Thus the trial court's order requiring the production of records and the answering of questions was valid; the trial court properly adjudged Dr. Lifschutz in contempt of court for intentionally violating that valid court order.[27]

The order to show cause is discharged and the petition for writ of habeas corpus is denied.

Mosk, Acting C. J., McComb, J., Peters, J., Burke, J., Sullivan, J., and Molinari, J.,* concurred.

---

[27]At oral argument petitioner raised the additional argument that the civil contempt provisions of section 1219 of the Code of Civil Procedure, providing that an individual who is in contempt because of his "omission to perform an act which is yet in [his] power . . . to perform" may be confined until he performs the act, constitutes "cruel and unusual" punishment as applied to him. Petitioner contends that the application of the section will result in life imprisonment if the doctor refuses to betray his professional convictions. The short answer to petitioner's complaint is that civil contempt, as contrasted with criminal contempt, has traditionally been viewed as non-punitive, for its purpose is only to compel compliance with a lawful order of the court; petitioner, key to his jail cell in pocket (see *Uphaus* v. *Wyman* (1960) 364 U.S. 388, 404 [5 L.Ed.2d 148, 157-158, 81 S.Ct. 153] (Douglas, J., dissenting)), can secure his own release at any time by following the court order. Confinement until compliance, under civil contempt, has universally been upheld as consistent with constitutional strictures. (See, e.g., *Shillitani* v. *United States* (1966) 384 U.S. 364, 370 [16 L.Ed.2d 622, 627, 86 S.Ct. 1531]; *Uphaus* v. *Wyman* (1959) 360 U.S. 72, 81-82 [3 L.Ed.2d 1090, 1098–1099, 79 S.Ct. 1040].) Furthermore, petitioner misjudges the possible duration of his confinement; he can only be confined so long as the underlying litigation remains alive. (Cf. *Shillitani* v. *United States, supra,* 384 U.S. 364, 371-372 [16 L.Ed.2d 622, 627-628].) When the trial is concluded or the litigation is otherwise terminated, imprisonment for civil contempt must cease. (See *Ex parte Rowe* (1857) 7 Cal. 175, 177; cf. *Morelli* v. *Superior Court* (1969) 1 Cal.3d 328, 332 [82 Cal.Rptr. 375, 461 P.2d 655].)

*Assigned by the Chairman of the Judicial Council.