[No. B015060. Second Dist., Div. Two. Mar. 5, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
VAN HOANG MONG PHAM, Defendant and Appellant.

**1532**

**COUNSEL**

Engen & Kirkpatrick and Alexander W. Kirkpatrick for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Donald E. De Nicola and Alison Braun, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**COMPTON, J.**—Defendant, charged in a multicount felony complaint, pleaded guilty in the municipal court to one count of violating Welfare and Institutions Code section 14107 (filing a false claim under the Medi-Cal program) after an unsuccessful attempt to suppress evidence pursuant to Penal Code section 1538.5. Sentence was pronounced in the superior court. (Pen. Code, § 859a.) She appeals seeking review of the denial of her motion to suppress. (Pen. Code, § 1538.5, subd. (m).) We affirm.

We first observe that defendant appears to labor under a misconception of the office of a motion to suppress pursuant to Penal Code section 1538.5. Subdivision (a) of that statute provides in part that "[a] defendant may move . . . to suppress . . . any . . . thing obtained *as a result of a search or seizure.* . . ." (Italics added.)

While there was apparently a search warrant executed in this case on February 15, 1984, the defendant, as is too often the case, fails to specify for us just what evidence was seized under that warrant and what specific evidence she sought to suppress. Instead, defendant simply takes the position that *all* evidence against her should have been suppressed even though she admits in her brief that "[t]he charges against [defendant] were based primarily on the information obtained by the undercover operations of August 9, 1983 and September 6, 1983."

The charge to which defendant pleaded guilty was for filing a false Medi-Cal claim on September 6, 1983. It appears that defendant's assessment is correct and that the search warrant executed some five months later produced no significant evidence. In fact, on appeal defendant focuses entirely on the conduct of the undercover operators on August 9 and September 6.

It is clear from the record that the evidence gathered by the undercover operators came from face to face conversations with the defendant at her husband's medical office—a place that was open to the public. Hence, the evidence which defendant sought to suppress was not the product of a search or seizure.

 The procedure outlined in Penal Code section 1538.5 was designed to avoid litigating the issue of the validity of a search and seizure during trial and after jeopardy has attached leaving the People with no opportunity to appeal an adverse ruling and hence no method of correcting an improper order of suppression. The statutory scheme is not and was not conceived as an omnibus procedure to determine, pretrial, the admissibility of all categories of evidence. (See *People* v. *Manning* (1973) 33 Cal.App.3d 586 [109 Cal.Rptr. 531].)

The underlying factual situation in this case is that two undercover agents, employed by the California Department of Justice and the California Department of Health Services, were investigating the activities of defendant's husband, a medical doctor, in connection with the filing of false claims under the Medi-Cal program.

In the course of the investigation, the operators went to the doctor's office and presented to defendant, who was seated at the reception desk, fictitious Medi-Cal cards with which they had been furnished. In the ensuing conversation, defendant gave the operators cash and prescriptions and offered to pay a fixed sum of money on a regular basis for any Medi-Cal cards that the operators could provide in the future.

Welfare and Institutions Code section 14026.5[1] provides a procedure by which the Department of Health Services may issue Medi-Cal cards to law enforcement agents investigating Medi-Cal fraud. The essence of the proce-

---

[1]Welfare and Institutions Code section 14026.5 reads: "(a) The State Director of Health Services shall issue Medi-Cal cards to peace officers or persons working under such officers' immediate supervision for the purpose of conducting investigations of Medi-Cal fraud, or a violation of the Medical Practice Act as set forth at Chapter 5 (commencing with Section 2000) of Division 2 of the Business and Professions Code, upon an order of a magistrate issued pursuant to subdivision (c).

"(b) Nothing in this section shall be construed to mean that it is the exclusive method for conducting investigations for Medi-Cal fraud or for violations of the Medical Practice Act as set forth at Chapter 5 (commencing with Section 2000) of Division 2 of the Business and Professions Code.

"(c) A magistrate may issue an order for the issuance of Medi-Cal cards to peace officers upon a showing of reasonable suspicion that the person being investigated has committed or is committing Medi-Cal fraud or a violation of the Medical Practice Act as set forth in Chapter 5 (commencing with Section 2000) of Division 2 of the Business and Professions Code. As used in this section, "reasonable suspicion" means that the peace officer subjectively entertains such a suspicion and that it is objectively reasonable for him to do so. The facts must be those which would cause any reasonable peace officer in a like position, drawing when appropriate on his training and experience, to suspect the same criminal activity and the same involvement by the person in question. A showing of reasonable suspicion may be made either by written statement under penalty of perjury or by oral statement taken under oath, recorded and transcribed.

"..................................................................................."

dure is that a court order is required before these specially issued Medi-Cal cards can be used in the investigation of a particular individual.

The investigation of defendant's husband was part of a statewide investigative project during the course of which a number of these cards had been issued pursuant to court orders naming other doctors and pharmacies.

On August 9, 1983, a judge of the Municipal Court for the Los Angeles Judicial District issued an order for the issuance and use of Medi-Cal cards by law enforcement officers in the investigation of defendant's husband. The investigators, after obtaining the court order, proceeded to the doctor's office armed with cards that had been previously issued under other court orders rather than waiting for the issuance of yet additional new cards. It appears that, but for the particular names of the individuals which appear on these cards as the holders thereof, all of the cards are exactly the same in form and content.

■ Defendant attempts to equate this practice with an unreasonable search conducted without a validly issued search warrant. The analogy fails.

In the first place, Welfare and Institutions Code section 14026.5 does not require that a court order be issued before *any* investigation of an individual for Medi-Cal fraud may be conducted. Such an order is required only for the use of the Medi-Cal cards. While it may be more difficult to obtain the necessary evidence without them, there is nothing in the law which requires that an investigation of Medi-Cal fraud be conducted only by the use of such cards.

Secondly, there is no magic in which particular cards are used so long as they are issued pursuant to a court order and used only after a court has authorized the use of this type of card against a particular individual. Each of those conditions were met in the present case.

Finally, and most importantly, the use of the cards, under the circumstances indicated, invokes no constitutional considerations. The scheme for issuance of such cards is purely a creature of statute.

■ The exclusionary rule, which is at issue in proceedings to suppress evidence under Penal Code section 1538.5, was adopted as a court-made rule for the purpose of deterring Fourth Amendment violations of the United States Constitution. (*Walder* v. *United States* (1954) 347 U.S. 62 [98 L.Ed. 503, 74 S.Ct. 354]; *Weeks* v. *United States* (1914) 232 U.S. 383 [58 L.Ed. 652, 34 S.Ct. 341].)

■ Since the motion to suppress on the part of the defendant in this case was not cognizable under Penal Code section 1538.5 and had no basis in law or fact, it was properly denied.

The judgment is affirmed.

Roth, P. J., and Fukuto, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 3, 1987.