[No. B016917. Second Dist., Div. Four. Sept. 11, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
THUY TIEN VAN LE, Defendant and Appellant.

846

**COUNSEL**

Steiner & Gerstein and Jonathan B. Steiner for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Linda C. Johnson and Noreen F. Berra, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**McCLOSKY, J.**—Thuy Tien Van Le appeals from the judgment entered following her plea of guilty to presenting false claims in violation of Welfare and Institutions Code section 14107. She contends that the trial court erred in denying her motion to suppress pursuant to section 1538.5 of the Penal Code.

Appellant, the proprietor of L.A. Central Pharmacy, was charged in a first amended complaint with two counts of conspiracy to cheat and defraud (Pen. Code, § 182, subd. 4), twenty-three counts of presenting false claims (Welf. & Inst. Code, § 14107), and one count of grand theft (Pen. Code, § 487, subd. 1) in connection with Medi-Cal fraud. She brought a motion pursuant to Penal Code section 1538.5 to suppress evidence obtained by undercover investigators using Medi-Cal cards on the ground that the cards were not used in compliance with Welfare and Institutions Code section

14026.5. Her motion was denied. Appellant pleaded guilty to one count of presenting false claims. (Welf. & Inst. Code, § 14107.) The remaining counts were dismissed. She was sentenced to one year in county jail, which sentence was suspended, and was granted probation for a period of three years.

Appellant bases her contention that her motion to suppress should have been granted upon the grounds that "Welfare and Institutions Code section 14026.5 authorizes the use of fictitious Medi-Cal cards for undercover operations only under the 'immediate supervision' of a peace officer and only upon a prior judicial determination of 'reasonable suspicion' that the person who is the subject of the use of the fictitious card has committed or is committing Medi-Cal fraud"; and that "[t]he purpose of section 14026.5 is to provide protection against violations of the doctor-patient privilege, unreasonable search and seizure and the right to privacy to health professionals alleged to be involved in professional misconduct; the numerous violations of the statute must lead to the exclusion of any evidence thereby obtained." She further contends that "[a]s appellant pleaded guilty in this case on the understanding that she could raise the denial of her Penal Code section 1538.5 motion on appeal, if she cannot appeal on those grounds, she must be allowed to withdraw her guilty plea."

Appellant's conviction results from a six-county investigation of Medi-Cal fraud. In July 1983, a task force began an investigation of Dr. Tran. As part of that investigation it obtained a court order pursuant to section 14026.5 of Welfare and Institutions Code for the issuance of Medi-Cal cards. On July 21, 1983, two operatives under the supervision of the Department of Justice's investigators took the cards to Dr. Tran's office to determine what type of service the physician would give them. The office was in the same building and adjoining L.A. Central Pharmacy. Dr. Tran gave the operatives prescriptions for noncovered medications and told them to have the prescriptions filled at L.A. Central Pharmacy. The operatives had the prescriptions filled at L.A. Central Pharmacy without first asking permission of the investigators, who were observing from outside the building.

On July 28, 1983, the investigators obtained a court order pursuant to Welfare and Institutions Code section 14026.5 regarding investigation of Dr. Trang. The investigators drove the operatives to L.A. Central Pharmacy. From there the operatives were driven to Dr. Trang's office in San Gabriel by a driver from L.A. Central Pharmacy. The investigators followed. The operatives were returned to the pharmacy by the L.A. Central

Pharmacy driver. There they obtained medication and cash for prescriptions given them by Dr. Trang. They did not first obtain permission from the investigators.

On August 9, 1983, the investigators obtained a court order pursuant to section 14026.5 of the Welfare and Institutions Code for investigation of L.A. Central Pharmacy. Their application was based upon information obtained in their July 21 and July 28 operations. On August 11, the investigators took the operatives to the office of Dr. Dinh, who they had been told would give prescriptions without conducting an examination. The operatives obtained prescriptions from Dr. Dinh. The investigators then took the operatives to L.A. Central Pharmacy where they obtained medications, merchandise, and cash, using previously issued Medi-Cal cards.

Appellant entered into a plea bargain pursuant to which she waived preliminary hearing on the condition that she would have a right to make a motion to suppress evidence in Superior Court. She agreed that she would plead guilty to one count of violation of Welfare and Institutions Code section 14107 if her suppression motion were denied. The prosecutor agreed to stand mute with regard to sentencing, and to dismiss the remaining counts. Appellant's counsel stated: "The reason for this is to preserve the issue on appeal for the Appellate Court. That's the reason we are having the motion." The trial court held that the motion was properly brought as a Penal Code section 1538.5 motion in light of the fact that there had been a seizure and the defense was asserting Fourth Amendment rights, that Welfare and Institutions Code section 14026.5 had not been violated under the facts of this case, and that even if it had been, the violation would not require suppression under the exclusionary rule.

We hold that the trial court's determination following the guilty plea is appealable (Pen. Code, § 1538.5, subd. (m))[1] and appellant is not entitled to withdraw her guilty plea.

■ At the outset, we note that despite appellant's argument to the contrary, her major contention is governed by *People* v. *Pham* (1987) 189 Cal.App.3d 1531 [235 Cal.Rptr. 99]. The court there held that the exclusionary rule, pursuant to which evidence is suppressed in order to deter violations of the Fourth Amendment of the United States Constitution,

---

[1] Penal Code section 1538.5, subdivision (m), states in relevant part: "A defendant may seek further review of the validity of a search or seizure on appeal from a conviction in a criminal case notwithstanding the fact that such judgment of conviction is predicated upon a plea of guilty. Such review on appeal may be obtained by the defendant providing that at some stage of the proceedings prior to conviction he has moved for the return of property or the suppression of the evidence."

does not require suppression of evidence obtained through the use of Medi-Cal cards in violation of section 14026.5 of the Welfare and Institutions Code. (*Id.,* at p. 1535.) We are not persuaded to reach a different result by appellant's arguments regarding the physician-patient privilege and the constitutional right of privacy.

Appellant argues that evidence obtained through the use of Medi-Cal cards in violation of section 14026.5 of the Welfare and Institutions Code should be suppressed in order to protect the zone of privacy created by the physician-patient privilege (Evid. Code, §§ 990-1007) and the constitutional right of privacy. (Cal. Const., art. I, § 1.) The flaw in appellant's argument is that the acts involved here do not impinge on an interest in personal privacy. (See *Wood* v. *Superior Court* (1985) 166 Cal.App.3d 1138, 1145 [212 Cal.Rptr. 811].) The use of the cards in this case does not impinge on information concerning patients other than the undercover operatives (Evid. Code, § 993; see *Board of Medical Quality Assurance* v. *Gherardini* (1979) 93 Cal.App.3d 669, 679 [156 Cal.Rptr. 55]), does not impinge on confidential communications (Evid. Code, § 992), and does not impinge on communications with a physician. (Evid. Code, § 990; *Green* v. *Superior Court* (1963) 220 Cal.App.2d 121, 126 [33 Cal.Rptr. 604].)

Moreover, there is no statutory basis for excluding the evidence. ■ Use of a Medi-Cal card in violation of section 14026.5 of the Welfare and Institutions Code is by statute punishable as a misdemeanor. (Welf. & Inst. Code, § 14026.)[2] There is no explicit requirement of suppression of evidence obtained in violation of the statute. The statute's language neither indicates that the Legislature intended to require the exclusion of evidence obtained using Medi-Cal cards in violation of the section, nor convinces this court to extend the exclusionary rule to include this class of cases.

Moreover, we agree with the trial court's finding that there was no violation of Welfare and Institutions Code section 14026.5[3] under the circumstances of this case. Appellant contends that when the operatives left the

---

[2] Welfare and Institutions Code section 14026 provides in relevant part: "(a) It is a misdemeanor for a Medi-Cal beneficiary to furnish, give, or lend his Medi-Cal card or labels to any person other than a provider of service as required under Medi-Cal regulations. . . . [¶] (c) This section shall not apply to any peace officer while investigating Medi-Cal fraud or other crimes in performance of his official duties or to any person working under the peace officer's immediate direction, supervision, or instruction when such peace officer has been issued a Medi-Cal card pursuant to Section 14026.5."

[3] Welfare and Institutions Code section 14026.5 provides in relevant part: "(a) The State Director of Health Services shall issue Medi-Cal cards to peace officers or persons working under such officers' immediate supervision for the purpose of conducting investigations of Medi-Cal fraud, . . . upon an order of a magistrate issued pursuant to subdivision (c). . . . [¶] (c) A magistrate may issue an order for the issuance of Medi-Cal cards to peace officers upon a showing of reasonable suspicion that the person being investigated has committed or

offices of doctors they had been authorized to investigate, on July 21 and July 28, and went on each occasion to L.A. Central Pharmacy, they ceased working "under [peace] officers' immediate supervision for the purpose of conducting investigations of Medi-Cal fraud, . . ." (Welf. & Inst. Code, § 14026.5, subd. (a).) She asserts that any information obtained from those visits to the pharmacy was therefore obtained in violation of Welfare and Institutions Code section 14026.5.

That interpretation of the statute is too narrow. The visits to the pharmacy were in connection with the investigation of Drs. Tran and Trang. The investigators monitored the operatives' activities. The fact that the operatives did not obtain the investigators' permission to fill the prescriptions does not result in a violation of Welfare and Institutions Code section 14026.5, because the operatives did not embark on an unrelated probe. Since we find that those activities did not violate section 14026.5, it follows that the court order obtained on August 9, 1983, for the use of Medi-Cal cards in investigating L.A. Central Pharmacy, was not obtained on the basis of illegally obtained information. Once the order was obtained, the operatives could properly use Medi-Cal cards previously issued to them, rather than waiting for new cards to be issued pursuant to the August 9 order. (*People* v. *Pham, supra,* 189 Cal.App.3d at p. 1533.)

Appellant is not entitled to withdraw her guilty plea.

The judgment is affirmed.

Kingsley, Acting P. J., and Munoz, J.,* concurred.

---

is committing Medi-Cal fraud . . . . As used in this section, 'reasonable suspicion' means that the peace officer subjectively entertains such a suspicion and that it is objectively reasonable for him to do so. The facts must be those which would cause any reasonable peace officer in a like position, drawing when appropriate on his training and experience, to suspect the same criminal activity and the same involvement by the person in question."

* Assigned by the Chairperson of the Judicial Council.