[No. AO21322. First Dist., Div. Three. July 15, 1983.]

HENRY PATTERSON et al., Petitioners, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
G. AUSTIN CONKEY et al., Real Parties in Interest.

## Counsel

Scampini, Mortara & Harris, Haig A. Harris, Jr., and Neil S. Turner for Petitioners.

No appearance for Respondent.

Hassard, Bonnington, Rogers & Huber, Patricia J. Doran, David L. Suddendorf, Owen, Melbye & Rohlff and Richard B. Melbye for Real Parties in Interest.

## OPINION

**FEINBERG, J.**—This petition, brought by parents suing for the wrongful suicide death of their son, challenges an order requiring disclosure of the decedent's medical and psychiatric records pertaining to treatment by other facilities before his referral to the facility where the suicide occurred. The trial court accepted the defense argument that by bringing the wrongful death action petitioners tendered the issue of decedent's medical and psychiatric condition. We sustain the trial court's ruling.

The complaint in the underlying action alleges that when decedent Steven Patterson was transferred from the psychiatric ward of Chope Hospital to Cordilleras Center (one of the real parties in interest here) he was diagnosed as schizophrenic and his chart from Chope Hospital noted two prior suicide attempts. During the early days of his commitment to Cordilleras Center he was diagnosed as having "suicide ideation" and was placed in seclusion under close observation. Three days later, based upon a "pact" with the hospital staff that he would not hurt himself or try to kill himself, seclusion and close observation were discontinued. Two weeks later, on March 3, 1981, he hung himself from a curtain rod with his bedsheet. The complaint alleges that the defendant treatment facility and Dr. Conkey, his treating physician, were negligent in failing to take proper measures to protect the decedent from his suicide urges. Petitioners seek damages based upon loss of love, care, comfort, society, protection, companionship and support of their son.

After the action was filed, defendants moved for a court order requiring production of "all medical records, charts, reports, X-rays, etc., pertaining to the care or treatment rendered to Steven Patterson at Napa State Hospital, Peninsula Hospital Medical Center, Harold D. Chope Hospital, Mary's Help Hospital, McAuley Neuropsychiatric Institute, Sequoia Hospital, and Harry E. Bryan, M.D." Petitioners opposed the motion on the ground that Steven Patterson's medical history prior to admission to Cordilleras Center was not relevant to the issue of negligence in failing to properly protect him from himself. They noted that they did not claim that the defendants either caused or aggravated his condition and that they did not seek damages for loss of prospective financial support. After hearing, the court ordered release of all records pertaining to "care or treatment rendered on or after March 3, 1974." This petition followed.

Evidence Code section 994 provides that, with certain exceptions, a patient has a privilege to "refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and physician." Evidence Code section 1014 provides a similar privilege for a confidential

communication between patient and psychotherapist. Either privilege may be claimed by the personal representative of the patient if the patient is dead. (Evid. Code, §§ 993, 1013.) Both privileges may be found inapplicable under the identically worded patient-litigant exceptions contained in Evidence Code sections 996 and 1016: "There is no privilege under this article as to a communication relevant to an issue concerning the condition of the patient if such issue has been tendered by: . . . (d) [t]he plaintiff in an action brought under Section . . . 377 of the Code of Civil Procedure [Wrongful Death] for damages for the . . . death of the patient."

The sole issue in this proceeding is whether petitioners placed in issue their son's prior medical and psychiatric history when they filed their action for wrongful death.

Petitioners contend that because they are not claiming that defendants were negligent in not investigating the decedent's past medical history or that they caused or aggravated his medical and emotional condition, they have not tendered the issue of his medical and psychiatric history. On the issue of damages, they argue that by bringing the wrongful death action they have not placed in issue their son's mental and emotional condition, but only their own loss of love, care, comfort, society and affection. They acknowledge that the defendants are free to inquire into the nature and quality of the relationship between decedent and petitioners, but they contend that they are not entitled to access to the privileged communications. They argue that any other interpretation would require every plaintiff in a wrongful death action to surrender privileged records.

It is clear that the mere filing of a lawsuit does not trigger application of the patient-litigant exception (see *In re Lifschutz* (1970) 2 Cal.3d 415, 435-436 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1]; *Boling* v. *Superior Court* (1980) 105 Cal.App.3d 430, 437-439 [164 Cal.Rptr. 432].) A court must look to what issues have been raised by the litigant who seeks to assert the privilege, including potential defenses to the litigant's cause of action. "[T]he burden rests upon the patient initially to submit some showing that a given confidential communication is not directly related to the issue he has tendered to court. [Citation.] A patient may have to delimit his claimed [ailment] or explain, in general terms, the object of the psychotherapy in order to illustrate that it is not reasonably probable that the psychotherapeutic communications sought are directly relevant to the mental condition that he has placed in issue. In determining whether communications sufficiently relate to the mental condition at issue to require disclosure, the court should heed the basic privacy interests involved in the privilege [citation]; in general, the statutory psychotherapist-patient privilege 'is to

be liberally construed in favor of the patient.' [Citation.]" (*In re Lifschutz, supra,* 2 Cal.3d 415, 436-437 [fn. omitted].)

Petitioners have made a valiant attempt to delimit their claim in such a way as to remove all issues concerning their son's medical and psychiatric treatment prior to his admission to Cordilleras Center. However, we agree with the trial court's implicit conclusion that they have tendered the issues.

The decedent's psychiatric condition is at the heart of the lawsuit. The theory of recovery is that defendants did not properly respond to the decedent's condition. The fact that petitioners may possess strong evidence that the decedent was suicidal and that defendants knew of his condition does not completely remove his condition as an issue in the case. It merely suggests that defendants will have an uphill battle if they try to prove either that they did not know he was suicidal or that there was no reason to suspect he would actually commit suicide. Plaintiffs' possession of strong proof of an element of their case does not furnish a ground for barring defendants from discovery of evidence which might help their defense. Defendants should not be required to defend what is essentially a psychiatric malpractice case based solely upon what they learned about the patient during his short stay at Cordilleras Center.[1]

At oral argument, real parties suggested that discovery might show that they had a valid defense on the issue of proximate cause. It might show, for instance, that the decedent's suicide was inevitable and could not have been prevented or deferred by real parties. We need not consider whether such a defense would be likely to succeed. The point made by real parties' argument is that the nature of the lawsuit filed by petitioners requires the defense to make a full inquiry into the decedent's medical and psychiatric history in order to determine how to defend the action. Whether the discovery will in fact reveal a valid line of defense or admissible evidence remains to be seen. To deprive the defense of the opportunity to review the records is to require it to defend a psychiatric malpractice case with only partial knowledge of the patient's condition.[2] We read the patient-litigant exception as depriving plaintiffs of such an advantage over the defense.

We conclude that the trial court did not err in ordering disclosure of the psychiatric records. Because medical records may potentially shed light on the psychiatric condition and because petitioners make no distinction be-

---

[1]Nor should they be barred from viewing records which could reveal negligence attributable to the referring hospital, which could become the basis for a cross-complaint.

[2]Because of our conclusion on this point, we do not reach the issue of whether tender of the damage issue justifies disclosure.

tween psychiatric records and medical records for purposes of their argument, we reach the same conclusion as to the court's order concerning the medical records.

The alternative writ of prohibition is dissolved and the petition for peremptory writ is denied.

White, P. J., and Barry-Deal, J., concurred.