Filed 6/1/23

## <u>TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF SAN DIEGO**

**APPELLATE DIVISION**

| | |
|---|---|
| DOMINIQUE WHITEHAIR, | Appellate Division Case No.: **37-2022-00031761-CU-WM-CTL** |
| Petitioner, | Trial Court No.: MCR21-412 |
| v. | |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | **OPINION** |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

Petitioner Dominique John Whitehair filed a petition for writ of mandate challenging the March 21, 2022 Order denying Defendant's Motion to Quash Supboenas Duces Tecum for Privileged and Immaterial Information relative to the records of Atascadero State Hospital and Dr. James Reavis and the May 9, 2022 Order denying Defendant's motion for reconsideration entered by the San Diego Superior Court, David M. Rubin, Judge.[1]

---

[1] On August 11, 2022, Judge Rubin issued an Order of recusal and did not participate in the review or consideration of this matter.

The issue raised by this writ proceeding is a matter of first impression: whether a tier one sex offender[2] who meets the requirements for termination pursuant to Penal Code section 290, subdivision (e) and is not on probation waives the psychotherapist-patient privilege (Evid. Code, §1014) when the district attorney requests a hearing pursuant to subdivision (a)(1) and subpoenas petitioner's records to "present evidence regarding whether community safety would be significantly enhanced by requiring continued registration." (Pen. Code, § 290.5, subd. (a)(3).) The resolution of the issue turns on statutory interpretation, which we review de novo.

**Factual/Procedural Background**

In 1995, at the age of 18, Mr. Whitehair pled guilty to a misdemeanor violation of Penal Code section 647.6 (annoying/molesting a child) and was ordered to register as a sex offender pursuant to section 290. On September 2, 2011, his conviction was expunged pursuant to Penal Code section 1203.4.

On September 29, 2021, Mr. Whitehair filed a petition to terminate his obligation to register as a sex offender pursuant to Penal Code section 290.5. On November 9, 2021, the District Attorney filed a Response indicating their objection and requesting a court hearing as provided by Penal Code section 290.5, subdivision (a)(2) based on the assertion that community safety would be significantly enhanced by his continued registration.[3]

In preparation for the hearing, the District Attorney subpoenaed petitioner's psychiatric and medical records from Dr. James Reavis and Atascadero State Hospital, where petitioner was committed for a period of time in 2006 while serving a prison sentence in connection with a burglary conviction. Mr. Whitehair moved to quash the subpoenas.

In its March 21, 2022 ruling denying the motion to quash, the trial court relied upon

---

[2] "A tier one offender is subject to registration for a minimum of 10 years. A person is a tier one offender if the person is required to register for conviction of a misdemeanor described in subdivision (c), or for conviction of a felony described in subdivision (c) that was not a serious or violent felony as described in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7." (Pen. Code, §290, subd. (d)(1)(A).)

[3] Real Party did not dispute that Mr. Whitehair met the requirements for termination pursuant to subdivision (e) of Section 290.

Evidence Code section 998 relating to the physician-patient privilege noting that the physician-patient privilege does not apply in criminal proceedings, rather than Evidence Code section 1014 governing the psychologist-patient privilege.[4] (See March 21, 2022 transcript, pp. 111-115.) After numerous hearings, the trial court ultimately denied the motion to quash the subpoenas and a subsequent motion for reconsideration.

On June 24, 2022, Mr. Whitehair filed a Petition for a Writ of Mandate and/or Prohibition with the Fourth District Court of Appeal, Division One. On July 12, 2022, the Fourth District Court of Appeal requested that the District Attorney file an informal response to the petition. The informal response was filed on July 22, 2022, and on August 2, 2022. the Fourth District Court of Appeal issued an order denying the writ petition without prejudice so that it could properly be refiled in the Appellate Division of the San Diego County Superior Court.

On August 10, 2022, Mr. Whitehair filed the petition for writ of mandate in the Appellate Division, and on August 11, 2022, this court issued an order inviting Real Party to file a preliminary opposition. Real Party filed a preliminary opposition on August 19, 2022.

On October 12, 2023, the Appellate Division issued an Order to Show Cause. Real Party in Interest filed a Return on November 1, 2022, and Petitioner filed a Reply on December 1, 2022. Following argument on April 19, 2023, before Appellate Division Presiding Judge Albert T. Harutunian III and Appellate Division Judges Frank L. Birchak and Brad A. Weinreb, this matter was taken under submission.

### Statutory Interpretation

Commencing January 1, 2021, the sex offender registration requirement in California was restructured. Three tiers of registration were established "primarily based on the offense of conviction, for periods of at least 10 years (tier one), at least 20 years (tier two), and life (tier

---

[4] Unlike the physician-patient privilege, the psychotherapist-patient privilege applies in criminal proceedings. (*Fish v. Superior Court* (2019) 42 Cal.App.5th 811, 817-818.)

three). [Citations.]" (*People v. Thai* (2023) 90 Cal.App.5th 427, ___, 307 Cal.Rptr.3d 178, 181.) Penal Code section 290.5 became effective on July 1, 2021 and "established procedures for a person to seek termination from the sex offender registry if the person meets certain criteria, including completion of the mandated minimum registration period. (§ 290.5, subds. (a)-(c).) The prosecution may request a hearing and present evidence to establish 'community safety would be significantly enhanced by requiring continued registration.' (§ 290.5, subd. (a)(2), (3).)" (*People v. Thai, supra*, at p. 181.)

The well-established rules of statutory construction require a reviewing court to ascertain the intent of the Legislature and adopt the construction that "best effectuates the purpose of the law." (*Doe v. Brown* (2009) 177 Cal.App.4th 408, 417, internal quotation marks omitted.)

> " ' "The purpose of section 290 is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future." ' " [Citation.] "In recent years, section 290 registration has acquired a second purpose: to notify members of the public of the existence and location of sex offenders so they can take protective measures." [Citation.] The purpose behind section 290.5 quite obviously is to relieve former sex offenders of the onerous registration requirement when they have demonstrated their rehabilitation and convinced the court that they no longer pose a threat to others necessitating the protective measure of registration.

(*People v. Tuck* (2012) 204 Cal.App.4th 724, 740-741(conc. opn.).) We begin with the statutory language. If a statute is amenable to two alternative interpretations, courts will follow the one that leads to the more reasonable result. (*People v. Arias* (2008) 45 Cal.4th 169, 177.) If a statute defining a crime or punishment is susceptible of two reasonable interpretations, courts will ordinarily adopt the interpretation more favorable to the defendant. (*Id.*)

Penal Code section 290.5, subdivision (a)(2) provides that if, after the registering law enforcement agency reports to the district attorney that a tier one offender has met the requirements for termination pursuant to subdivision (e) of Section 290, the district attorney

does not request a hearing, "the petition for termination shall be granted if the court finds the required proof of current registration is presented in the petition, provided that the registering agency reported that the person met the requirement for termination pursuant to subdivision (e) of Section 290, there are no pending charges against the person which could extend the time to complete the registration requirements of the tier or change the person's tier status, and the person is not in custody or on parole, probation, or supervised release." Here, petitioner is not in custody or on parole, probation, or supervised release and is apparently otherwise eligible for termination – under these circumstances, had the district attorney not elected to request a hearing, the trial court would have been statutorily required to grant the termination petition.

"If the district attorney requests a hearing, the district attorney shall be entitled to present evidence regarding whether community safety would be significantly enhanced by requiring continued registration." (Pen. Code, §290.5, subd. (a)(3).) Subdivision (a)(3) goes on to provide the following express guidance to the parties and the trial court:

> In determining whether to order continued registration, the court shall consider: the nature and facts of the registerable offense; the age and number of victims; whether any victim was a stranger at the time of the offense (known to the offender for less than 24 hours); criminal and relevant noncriminal behavior before and after conviction for the registerable offense; the time period during which the person has not reoffended; successful completion, if any, of a Sex Offender Management Board-certified sex offender treatment program; and the person's current risk of sexual or violent reoffense, including the person's risk levels on SARATSO static, dynamic, and violence risk assessment instruments, if available. Any judicial determination made pursuant to this section may be heard and determined upon declarations, affidavits, police reports, or any other evidence submitted by the parties which is reliable, material, and relevant.

The Court of Appeal in *People v. Thai, supra,* 90 Cal.App.5th 427, 307 Cal.Rptr.3d 178 observed that the phrase "community safety would be significantly enhanced" is not specifically defined but, noted that the underlying purpose of section 290 registration is to ensure police can surveil sex offenders at all times because they pose a "continuing threat to society." (*Id*. at p. 181 citing *People v. Sorden* (2005) 36 Cal.4th 65 at p. 72-73 ["'The purpose of section 290 is

5

to assure that [sex offenders] shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit *similar offenses* in the future. [Citation.]'" (Italics added.).].)  Although the statute requires the trial court to consider "criminal and relevant noncriminal behavior before and after conviction for the registerable offense" as one of the many factors, *Thai* made clear that the trial court's focus in a termination proceeding pursuant to section 290.5 is whether petitioner is *currently* likely to reoffend in violation of Penal Code section 290 et seq.  The Court of Appeal reversed the trial court's order denying the termination petition and explained that the prosecution's burden when opposing a section 290.5 termination petition is "to establish [a petitioner] [is] a *current* risk" (*id.* at p. 183, italics added) by producing "evidence establishing that terminating the registration requirement considerably raised the threat to society because [the petitioner] [is] *currently* likely to reoffend." (*Id.* at p. 182, italics added.)  The Court of Appeal also noted that the prosecution "could have sought a current risk assessment" rather than relying on the 24-year-old offense as a basis for the petitioner presenting "a danger today." (*Id.* at p. 183.)  In this case, rather than seeking a current risk assessment, the prosecution subpoenaed petitioner's records from a hospitalization in 2006.

As discussed below, we conclude there is no implied waiver of the psychotherapist-patient privilege by a tier one offender who is not on probation, nor is the patient-litigant exception to the privilege applicable in a section 290.5 termination proceeding.

### **The psychotherapist-patient privilege**

Section 290.5 makes no mention of the psychotherapist-patient privilege.  Where the statutory language is reasonably susceptible of more than one interpretation, "…we will examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes, and we can look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the

statutory scheme of which the statute is a part. [Citation.] [Citation.]" (*Doe v. Brown, supra,* 177 Cal.App.4th at p. 417, internal quotation marks omitted.)

> " 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" [Citation.] Further, "We presume that the Legislature, when enacting a statute, was aware of existing related laws and intended to maintain a consistent body of rules. [Citation.]" [Citation.]

(*Id*. at pp. 417-418.) In order to adopt the construction that best harmonizes section 290.5 internally and with related statutes, we observe that the Legislature has expressly provided for a sex offender's waiver of the psychotherapist-patient privilege as a term of probation. Penal Code section 1230.067, subdivision (b) states in pertinent part: "The terms of probation for persons placed on formal probation for an offense that requires registration pursuant to Sections 290 to 290.023, inclusive, shall include all of the following: …(4) Waiver of any psychotherapist-patient privilege to enable communication between the sex offender management professional and supervising probation officer, pursuant to Section 290.09."

As explained in *People v. Garcia* (2017) 2 Cal.5th 792, the Legislature specifically outlined a mandated process for a sex offender on probation, including "participation and successful completion of an approved sex offender management program (§1203.067, subd. (b)(1), (2)); waiver of the privilege against self-incrimination and participation in polygraph examinations as part of the sex offender management program (*id*. subd. (b)(3)); and waiver of the psychotherapist-patient privilege to enable communication between the sex offender management professional and the supervising probation officer and polygraph examiner (*id*. subd. (b)(4))." (*People v. Garcia, supra*, 2 Cal.5th at p. 802.)

The express waiver of the psychotherapist-patient privilege for sex offenders on probation was part of a broader "unified strategy for sex offender management" created by the Legislature. (See *People v. Garcia, supra,* 2 Cal.5th at pp. 800-801.)

7

When Chelsea's Law was enacted, California had been relying on a patchwork of management strategies that was crafted " 'piece by piece through separate and uncoordinated legislative and administrative actions.' " [Citation.] The new provisions adopted a unified strategy for sex offender management known as the "Containment Model," which was characterized by CASOMB as "'the *best practice* for community supervision of sex offenders.' " [Citation.]

… Accordingly, CASOMB concluded that adoption of the full model was necessary to reduce the risk associated with managing convicted sex offenders on probation. [Citation.] What CASOMB asserted, in particular, is that the absence of open and ongoing communication among the professionals and others involved in the offender's supervision "compromises the purpose of the containment team approach and may jeopardize the safety of the community." [Citation.]

Following this recommendation, the Legislature mandated certain conditions for any registered sex offender placed on probation. Among these are participation and successful completion of an approved sex offender management program (§ 1203.067, subd. (b)(1), (2)); waiver of the privilege against self-incrimination and participation in polygraph examinations as part of the sex offender management program (*id.* subd. (b)(3)); and waiver of the psychotherapist-patient privilege to enable communication between the sex offender management professional and the supervising probation officer and polygraph examiner (*id.* subd. (b)(4)).

(*People v. Garcia, supra,* 2 Cal.5th at pp. 800-801.) But even in the context of probation, the waiver remains limited:

The subdivision (b)(4) condition thus should be read to intrude on the privilege only to a *limited* extent: the extent specified in the condition itself, which describes what is reasonably necessary to enable communications among the psychotherapist, probation officer, and polygraph examiner; facilitate their understanding of the challenges defendant presents; and allow those containment team members to measure the effectiveness of the sex offender treatment and management program. (Pen. Code, § 1203.067, subd. (b)(4).) In all other respects, the privilege remains intact. So construed, the condition is not overbroad.

(*People v. Garcia, supra,* at p. 813, italics added.)

8

Mr. Whitehair is not a probationer subject to the Penal Code section 1203.067 limited waiver of the psychotherapist-patient privilege, nor is he a "sexually violent predator" subject to the "dangerous patient" exception to the psychotherapist-privilege privilege set forth in Evidence Code section 1024. As explained in *Story v. Superior Court* (2003) 109 Cal.App.4th 1007, sexually violent predators are not comparable to a defendant who has been granted probation, let alone a tier one offender who is not on probation.

> Sexually violent predators are detained under the Sexually Violent Predators Act in order to protect the public and treat the sexual predator's mental disorder. Therefore, the public policy in favor of confidential psychotherapist-patient communications must yield to the public safety purpose of a full assessment of the sexual predator's mental condition, including review of institutional psychotherapy records.
> A defendant who has been granted probation is not comparable to a person who has been committed under the Sexually Violent Predators Act. 'Probation is generally reserved for convicted criminals whose conditional release into society poses minimal risk to public safety and promotes rehabilitation.' [Citation.] Therefore, the [Evidence Code] section 1024 'dangerous patient' exception to the psychotherapist-patient privilege is not generally applicable to the records of probation-conditioned psychotherapy.

(*Id.* at p. 1017.)

We must presume that the Legislature was aware of Section 1230.067 and Evidence Code section 1024, and its failure to include an express waiver of the psychotherapist-patient privilege in 290.5 reflects the intent that the filing of a petition for relief does not constitute a waiver of the psychotherapist-patient privilege. (See *Yeager v. Blue Cross of California* (2009) 175 Cal.App.4th 1098, 1103 ["We may not make a silent statute speak by inserting language the Legislature did not put in the legislation. [Citation.]"])

Extending waiver of the psychotherapist-patient privilege to a tier one offender who is not on probation merely because they exercised their statutory right to petition for termination of registration pursuant to Penal Code section 290.5 is contrary to the Legislature's unified strategy for sex offender management. Such an interpretation ignores the express distinctions

9

made by the Legislature's tier system for sex offenders and would serve to impermissibly extend the application of the Penal Code section 1203.067 (b)(4) waiver to non-probationers and extend the application of the Evidence Code section 1024 waiver to non-violent offenders. In addition, any such implied waiver of the privilege could not be uniformly applied to all petitioners seeking termination of registration since it would only be triggered by the prosecution requesting a hearing in cases in which a petitioner could be otherwise eligible for termination. We conclude the Legislature did not intend such an arbitrary and inequitable result.

Furthermore, concluding that a petitioner seeking to terminate registration waives the psychotherapist-patient privilege could also have the unintended effect of causing tier one registrants to avoid seeking psychological treatment and/or causing them to be reluctant to "make the full disclosure upon which diagnosis and treatment … depends." (*People v. Wharton* (1991) 53 Cal.3d 522, 555 ["We have previously recognized 'the public interest in supporting effective treatment of mental illness and ... the consequent public importance of safeguarding the confidential character of psychotherapeutic communication.' (*Tarasoff, supra,* 17 Cal.3d at p. 440; *In re Lifschutz, supra,* 2 Cal.3d at pp. 422-423.) 'Psychoanalysis and psychotherapy are dependent upon the fullest revelation of the most intimate and embarrassing details of the patient's life .... Unless a patient ... is assured that such information can and will be held in utmost confidence, he will be reluctant to make the full disclosure upon which diagnosis and treatment ... depends.' (Sen. Judiciary Com. com., 29B West's Ann. Evid. Code (1966 ed.) § 1014, p. 621.)"].) As explained by the United States Supreme Court in *Jaffee v. Redmond* (1996) 518 U.S. 1, 116 S.Ct. 1923:

> …[T]he psychotherapist-patient privilege is "rooted in the imperative need for confidence and trust." [Citation.] …. Effective psychotherapy … depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede

10

> development of the confidential relationship necessary for
> successful treatment.

(*Id*. at p. 10, fn omitted.)  Creating such a possibility of disclosure that may impede necessary treatment for sex offenders would run contrary to public policy.

In light of the foregoing we will not judicially legislate an implied waiver of the psychotherapist-patient privilege into section 290.5 that would apply to a tier one offender who is not on probation.

### **Patient-Litigant Exception does not apply to Section 290.5 special proceeding:**

Real Party also argues that the patient-litigant exception to the privilege applies.  As explained in the Legislative Comment to Evidence Code section 1014 (psychologist-patient privilege):

> Although the psychotherapist-patient privilege applies in a criminal proceeding, the privilege is not available to a defendant who puts his mental or emotional condition in issue, as, for example, by a plea of insanity or a claim of diminished responsibility.  See Evidence Code §§ 1016 and 1023. In such a proceeding, the trier of fact should have available to it all information that can be obtained in regard to the defendant's mental or emotional condition. That evidence can often be furnished by the psychotherapist who examined or treated the patient-defendant.

We conclude that the patient-litigant exception to the psychotherapist-patient is not triggered by the filing of a section 290.5 termination petition or the prosecution's request for a hearing.

As reiterated in *Fish v. Superior Court,* a case in which the Court of Appeal issued a writ prohibiting the trial court to review the defendant's psychotherapy records and vacating its denial of defendant's motion to quash: "[F]or policy reasons the psychotherapist-patient privilege is broadly construed in favor of the patient, while exceptions to the privilege are narrowly construed. [Citation.]"  (*Fish v. Superior Court, supra,* 42 Cal.App.5[th] at p. 818.)  And as explained in *People v. Ka Yang* (2021) 67 Cal.App.5th 1:

"We have an 'obligation to construe narrowly any exception to the psychotherapist-patient privilege: we must apply such an exception only when the patient's case falls squarely within its ambit.' " [Citation.] "The privilege is also considered 'paramount to prosecution,' generally outweighing the People's interest in successful prosecutions and their right to due process of law under article I, section 28, subdivision (d) of the California Constitution." [Citation.]

(*Id*. at pp. 47-48.) A section 290.5 proceeding does not "fall squarely" within the patient-litigant exception. This legislatively created special proceeding is part of the Legislature's "unified strategy for sex offender management." It is not a defense or a claim raised by a defendant in the underlying criminal case whereby the defendant places his mental or emotional condition at issue.

Nor can section 290.5 be properly interpreted to suggest that a defendant places his overall mental and emotional condition at issue whenever the prosecution requests a hearing to "present evidence regarding whether community safety would be significantly enhanced by requiring continued registration." (Pen. Code, § 290.5, subd. (a)(3).) As stated in the Legislative Counsel's Digest, 2017 Cal. Legis. Serv. Ch. 541: "The bill would require the offender to file a petition at the expiration of his or her minimum registration period and would authorize the district attorney to request a hearing on the petition *if the petitioner has not fulfilled the requirement of successful tier completion, as specified*." Here, it is undisputed that petitioner had fulfilled the requirement of successful tier completion.

"A patient loses the protection of the psychotherapist-patient privilege only if they are *first* to 'tender' the issue in litigation. In that regard, the court looks to see which party was first to raise the issue. [Citation.] A party does not tender their mental condition simply by denying the opposing party's allegations regarding that condition. [Citation.]" (*People v. Ka Yang, supra,* 67 Cal.App.5th at p. 49, italics added.) The patient-litigant exception to the privilege "applies when the patient's *own* factual allegations raise an issue, not when the patient does no more than joining an issue by denying allegations. [Citation.]" *N.S. v. Superior Court* (2016) 7 Cal.App.5th 713, 719, original italics.) In this case, it is the prosecution that was the first to

12

"tender" the issue of Mr. Whitehair's mental health by requesting a hearing and issuing the subpoenas to obtain petitioner's privileged records.

Real Party relies heavily on *Patterson v. Superior Court* (1983) 147 Cal.App.3d 927, which involved a parents' civil wrongful death action following their child's suicide while at defendant Cordilleras Center. Defendants sought the child's prior psychological records from prior institutions, and the Court of Appeal upheld the trial court's implied finding that the decedent's mental health was tendered by Plaintiffs and noted that "Defendants should not be required to defend what is essentially a psychiatric malpractice case based solely upon what they learned about the patient during his short stay at Cordilleras Center." (*Id.* at p. 931, fn omitted.] The *Patterson* court explained:

> A court must look to what issues have been raised by the litigant who seeks to assert the privilege, including potential defenses to the litigant's *cause of action.* "[T]he burden rests upon the patient initially to submit some showing that a given confidential communication is not directly related to the issue he has tendered to court. [Citation.] A patient may have to delimit his claimed [ailment] or explain, in general terms, the object of the psychotherapy in order to illustrate that it is not reasonably probable that the psychotherapeutic communications sought are directly relevant to the mental condition that he has placed in issue. In determining whether communications sufficiently relate to the mental condition at issue to require disclosure, the court should heed the basic privacy interests involved in the privilege [citation]; in general, the statutory psychotherapist-patient privilege 'is to be liberally construed in favor of the patient.' [Citation.]" ( *In re Lifschutz, supra.*, 2 Cal.3d 415, 436-437 [fn. omitted].)

> The decedent's psychiatric condition is at the heart of the lawsuit. The theory of recovery is that defendants did not properly respond to the decedent's condition. The fact that petitioners may possess strong evidence that the decedent was suicidal and that defendants knew of his condition does not completely remove his condition as an issue in the case. It merely suggests that defendants will have an uphill battle if they try to prove either that they did not know he was suicidal or that there was no reason to suspect he would actually commit suicide. Plaintiffs' possession of strong proof of an element of their case does not furnish a ground for barring defendants from discovery of evidence which might help their defense. Defendants should not be required to defend what is essentially a psychiatric malpractice case based solely upon what

13

they learned about the patient during his short stay at Cordilleras Center.[1]

(*Patterson, supra,* 147 Cal.App.3d at pp. 930-931.)

Unlike *Patterson*, a section 290.5 termination petition is a legislatively created special proceeding, not a "cause of action." Nor is petitioner's general mental health at the "heart" of this special proceeding. Rather, as discussed above, the prosecution's burden when opposing a section 290.5 termination petition is "to establish [a petitioner] [is] a *current* risk" (*Thai, supra,* 307 Cal.Rptr.3d at p. 183, italics added) by producing "evidence establishing that terminating the registration requirement considerably raised the threat to society because [the petitioner] [is] *currently* likely to reoffend." (*Id*. at p. 182, italics added.) A wholesale waiver of the psychotherapist-patient privilege relative to records from 2006 is not contemplated by a plain reading of the statute, which expressly includes the "person's *current* risk of sexual or violent reoffense, including the person's risk levels on SARATSO static, dynamic, and violence risk assessment instruments, if available." (Pen. Code, § 290.5, subd. (a)(3), italics added.)

Nor does Real Party's reliance on *Britt v. Superior Court* (1978) 20 Cal.3d 844 support the denial of writ relief. In *Britt*, the Court of Appeal reviewed whether a trial court could properly compel disclosure of protected associational activities when they were *directly* relevant and disclosure of the plaintiff's affiliation was *essential* to the fair resolution of the lawsuit. "Even under such circumstances, however, the general First Amendment principles noted above dictate that the compelled disclosure be narrowly drawn to assure maximum protection of the constitutional interests at stake." (*Britt, supra,* 20 Cal.3d at p. 859.)

*Simek v. Superior Court* (1981) 117 Cal.App.3d 169, a family court case in which the primary custodial spouse sought the hospitalization records of the other spouse in order to contest that spouse's visitation rights, is more instructive by analogy. In that case, mother submitted a declaration asserting that the children's father "had been a patient in a psychiatric ward two years previous for a 'complete mental breakdown,' and again a year previous for an attempted suicide…." (*Id*. at p. 171.) The *Simek* Court granted writ relief to quash the subpoenas, concluding that father did not "tender" his mental condition by opposing the

14

requested limits on his visitation, noting that "[i]f 'tender' includes what [father] did here, there would be no logical limits (other than relevance) upon disclosure of anything which [father] may have communicated to his psychotherapist or physician." (*Id.* at p. 176.)  Real Party's argument that the filing of a petition seeking relief section 290.5 constitutes "tender" would similarly eliminate any logical limits on disclosure of privileged and protected records other than relevance.

In *Simek,* the applicable statute mandates reasonable visitation "unless it is shown that such visitation would be detrimental to the best interests of the child," and the burden of proving detriment is upon the parent contesting visitation rights. (*Id.* at p. 176.)  The Simek Court went on to observe:  "It seems anomalous to suggest that a patient waives his privilege in confidential communications to physicians or psychiatrists simply by asserting his presumptive right of visitation." (*Id.*)  The *Simek* Court noted that its conclusion did not preclude consideration of father's emotional condition or behavior in relation to visitation rights on the basis of evidence *other* than privileged communications, "[n]or does it preclude, upon a proper showing, an order of mental examination pursuant to [Code]…. By these means, in a case of this sort, the best interests of the children could be adequately protected." (*Id.* at p. 177.)

Here, the trial court is statutorily mandated to terminate registration under Penal Code section 290.5 if a petitioner is otherwise eligible unless the prosecution satisfies its burden to establish that petitioner poses a current risk by producing "evidence establishing that terminating the registration requirement considerably raised the threat to society because [the petitioner] [is] *currently* likely to reoffend." (*Thai, supra,* 307 Cal.Rptr.3d at p. 182, italics added.)  It would similarly be anomalous to subject registrants to a wholesale implied waiver of the psychotherapist-patient privilege when they simply petition for their statutory rights under section 290.5 when the statute expressly provides for consideration of various documents and the prosecution is free to present non-privileged, relevant evidence. (See Pen. Code, §290.5, subd. (b)(3).)

Real Party concedes that a defendant in a 290.5 proceeding is not "raising the issue of a specific ailment or condition in litigation," but argues that the patient-litigant exception should

15

apply to not foreclose the People's inquiry into "relevant matters."  However, whether or not the subpoenaed records are relevant is not determinative.

"[P]rivileges under the Evidence Code have the effect of shielding otherwise relevant, and in some cases crucial, information from disclosure, based upon a legislative determination that the benefits served by the privilege outweigh the advantages that might be obtained in the absence of the privilege." (*People v. Gonzales* (2013) 56 Cal.4th 353, 374–375.)  The psychotherapist-patient privilege is statutory, and "relevancy is not a criterion in the protection afforded by the statutes. Unless waived or subject to a statutory exception, the privilege applies. The rules of privilege are designed to protect personal relationships and other interests where public policy deems them more important than the need for evidence. [Citation.]" (*Koshman v. Superior Court* (1980) 111 Cal.App.3d 294, 297.)

Real Party is not precluded from presenting relevant evidence that is not subject to the psychotherapist-patient privilege.  Penal Code section 290.5, subdivision (a)(3) expressly references relevant records that the trial court is to consider (i.e., "successful completion, if any, of a Sex Offender Management Board-certified sex offender treatment program; and the person's current risk of sexual or violent reoffense, including the person's risk levels on SARATSO static, dynamic, and violence risk assessment instruments, if available"), and the People can submit "declarations, affidavits, police reports, or any other evidence … which is reliable, material, and relevant."  Nothing prevents the People from presenting evidence at the hearing that is not protected by the psychotherapist-patient privilege rather than pursuing subpoenas of privileged records from 16 years ago.

Extending the patient-litigant exception under these circumstances would serve to eviscerate the privilege.  Section 290.5 cannot be interpreted to permit an unfettered fishing expedition into defendant's privileged records based on speculation to support the prosecution's opposition to a 290.5 petition filed by a tier one offender who is not on probation.

Let a writ of mandate issue directing the Superior Court to vacate the March 21, 2022 Order denying Defendant's Motion to Quash Supboenas Duces Tecum for Privileged and Immaterial Information relative to the records of Atascadero State Hospital and Dr. James

16

Reavis and the May 9, 2022 Order denying Defendant's motion for reconsideration and enter an Order quashing both subpoenas.

The stay previously imposed in this matter is lifted, and each party to bear their own costs relative to this writ proceeding. (Cal. Rules of Court, rule 8.936(b)(1).)


_____
FRANK L. BIRCHAK
Judge, Appellate Division

WEINREB, J., concurring:

I concur.


_____
BRAD A. WEINREB
Judge, Appellate Division


HARUTUNIAN, P.J., concurring and dissenting:

I concur in part and dissent in part.

I agree with the majority that the trial court erred in denying the motion to quash and issuing a protective order as to all the records. But I respectfully disagree with their conclusion that the People were not entitled to review any of the records, regardless of their content. In my view, the People were entitled to see relevant records, subject to a protective order, after review and redaction of non-relevant information by the trial court.

There is a fundamental issue whether a petitioner "tenders" his mental health by filing a Penal Code section 290.5 petition. Unlike the majority, I believe Petitioner's filing of such a petition does squarely place into question whether "community safety" necessitates continued sex-offender registration. If Petitioner had not filed the petition, his mental health records would not have been sought. Petitioner knew that filing the petition could result in a court hearing about whether he is a danger to the community, which is an issue that logically and obviously implicates his sexual impulses and self-control. The courts deal every day with cases where

17

mental health professionals consider past conduct and treatment of an individual in opining on their current level of dangerousness to society (e.g., SVP[5] and MDO[6] hearings). Initiating a court process that could lead to determining whether Petitioner is currently a danger to community safety puts him on notice that his past mental health records may be relevant and examined.

If the records are not relevant to the issues under Penal Code section 290.5, subdivision (a)(3), they should be redacted by the trial court after in camera review. If they are relevant, I believe public safety outweighs the desire of Petitioner to keep his records private regardless of the safeguards to limit the scope of any disclosure. Penal Code section 290.5, subdivision (a)(3) contemplates consideration by the court of "criminal and relevant noncriminal behavior before and after conviction." Petitioner's possible problems in controlling his actions, as reflected in his mental health records, fall within these categories of information that should be available to the trial court.

I would remand to the trial court with directions to conduct an in camera review of the records, to redact portions that are not relevant, and to order production of relevant portions subject to a protective order.

_____
ALBERT T. HARUTUNIAN III
Presiding Judge, Appellate Division

_____

[5] Sexually violent predator
[6] Mentally disordered offender.

Counsel:

Troy Britt, Office of the Public Defender, Attorney for Defendant and Appellant.

Kimberly Roth, Office of the District Attorney, for Plaintiff and Respondent.